## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

-------------------------------------------------------------- X

|  |  |  |
|---|---|---|
| | : | Case No.: |
| | : | |
| BREM MOLDOVSKY, L.L.C.; and | : | **JURY TRIAL DEMANDED** |
| BREM MOLDOVSKY, ESQUIRE | : | |
| | : | |
| *Plaintiffs*, | : | |
| vs. | : | **COMPLAINT** |
| | : | |
| ANDREW ELLNER; | : | |
| LIGHTBOX VENTURES, LLC;  and | : | |
| LIGHTBOX CAPITAL MANAGEMENT, LLC | : | |
| *Defendants*. | : | |
| | : | |
| | : | |

-------------------------------------------------------------- X

Plaintiff Brem Moldovsky, L.L.C.  (the "Moldovsky Firm") and Brem
Moldovsky, Esquire, *pro se* and by its attorney, Brem Moldovsky, Esq, as and for its Complaint
herein, alleges as follows:

### THE NATURE OF THE ACTION

1.      This action arises from plaintiff Moldovsky Firm and Defendants' prior
relationships as attorney and client.  Defendants were previously clients of Plaintiffs.  Between
the time before and in the course of the representation, Defendants recorded an unknown number
of telephone calls between themselves and Plaintiff.

2.      Defendants thereafter used the recordings and transcriptions of them to
harm, injure, harass, and abuse the Plaintiff, cause stress and distress, and threaten the Plaintiff.

3.      Defendants utilized the recordings and transcriptions of them to defame
Defendants but submitting them to the public record in order to make misrepresentations and
promote mistruths.

1

## THE PARTIES

4.     Plaintiff Brem Moldovsky, L.L.C. is a law firm with offices in Pennsylvania, New York, and New Jersey, and is also referred to herein as "the Moldovsky Firm."

5.     Plaintiff Brem Moldovsky, Esquire is an attorney with the Moldovsky Firm and with offices in Pennsylvania, New York, and New Jersey.

6.     Defendant Andrew Ellner is an individual residing at 210 West 77th Street, Apt. 8W, New York, NY 10024.

7.     Defendant Lightbox Ventures, LLC is an entity owned by Andrew Ellner with a registered address at 210 West 77th Street, Apt. 8W, New York, NY 10024.

8.     Defendant Lightbox Capital Management, LLC is an entity owned by Andrew Ellner with a registered address at 24 West 40th Street, Second Floor, New York, NY 10024.

9.     Andrew Ellner, Lightbox Ventures, LLC, and Lightbox Capital Management, LLC are hereinafter collectively referred to as "Lightbox".

## JURISDICTION AND VENUE

10.     Jurisdiction in this Court is proper under 28 U.S.C. §1 332(a) because plaintiff is a citizen of the State of Pennsylvania and Ellner and the Lightbox Defendants are citizens of the State of New York, and the amount in controversy exceeds $75,000.

11.     Venue in this Court is proper under 28 U.S.C. §1 391 (b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the State of Pennsylvania insofar as plaintiff operated the business at issue from the State of Pennsylvania and was damaged in Pennsylvania.

12.     At the time of the occurrences of this Complaint, a series of recorded phone conversations that were made by Lightbox, Lightbox was aware that Plaintiffs were based out of Bucks County, PA and were often in Bucks County, PA (and other places in Pennsylvania) as elaborated below.  Lightbox regularly mailed payments and materials to the Bucks County, Pennsylvania office, which he utilized and treated as the primary address for contact.  Lightbox received calls from and called to Defendants including outside of business hours and often on a Pennsylvania cell phone line with a 610 area code on a sufficiently regular basis, including on professional and personal time, on weekends and on holidays.  One phone call, memorialized by an alleged recording, was on Thanksgiving Day when Plaintiffs were in Bucks County.

13.     Now Lightbox has entered into the Commonwealth, has delivered the contraband recordings into the Commonwealth or plans to, and has introduced the contraband recordings to others, or so it is understood and believed.  Lightbox has availed itself of and the Commonwealth's jurisdiction including by the process of finding and hiring counsel, preparing for and then initiating an Eastern District of Pennsylvania action, Ellner v. Moldovsky, Case No.: 2:20-cv-06190-KSM, wherein Lightbox intends to use the recordings, information about the recordings, and misrepresentations about the recordings, within the litigation and without it, to others in the Commonwealth, etc. to further attack and damage the Plaintiffs as described below.

**BACKGROUND**

**ACQUAINTANCE WITH LIGHTBOX AND LIGHTBOX LITIGATION 2016-2018**

14.     The Moldovsky Firm began interacting with Mr. Ellner and Lightbox in January 2017, then representing them in February 2017.

3

15.     Mr. Ellner and Lightbox represented themselves as sophisticated, counseled, and capable and trustworthy of managing hundreds of millions of dollars in investments.  Mr. Ellner had previously worked for Lehman Brothers for many years, holding global and executive positions.

16.     The underlying litigation involved a failed joint venture for a global real estate venture Mr. Ellner claimed and believed had in excess of hundreds-of-millions of dollars-worth of potential, was a first in the industry, already had listings of hundreds-of-millions of dollars of real estate and more.

17.     During the time of discussions with Mr. Ellner over January and into February 2017 over terms of representation, the Plaintiffs discussed and received input from colleague and prior counsel, attorney Jonathan Miller regarding this potential representation.

## STRATEGIC AND COMMUNICATION ISSUES WITH LIGHTBOX

18.     In November 2017 The Moldovsky Firm exercised its contractual right to not have to continue on the litigation due concerns with the economic worthwhileness of the case and value, economic hardship on the firm, client misrepresentations and related, and this was part of what lead to the amending of the Agreement between the Firm and Lightbox.

19.     The Moldovsky Firm and Lightbox negotiated the Amended Agreement extensively, eventually reaching a consensus in December 2017 and executing an Amended Agreement that was substantially beneficial to Lightbox and to the Ellner Defendants in particular.

**WIRETAPPED PHONE CALL RECORDINGS ARE MADE BETWEEN
JANUARY 2017 – LATE SPRING OF 2018, INCLUDING THANKSGIVING
DAY, 2017**

20.     Over 2017 and about the first third of 2018, without the Plaintiffs'

knowledge, permission or consent, an unknown number of phone calls (from some to many)

between Mr. Ellner and Mr. Moldovsky were recorded by Ellner and Lightbox.

21.     The recordings included at least one conversation on Thanksgiving Day,

2017, while Mr. Moldovsky was at his home (which has an office) in Bucks County,

Pennsylvania, though there were others based on Mr. Miller Lightbox's counsel in the New York

Supreme Court, who had assumed representation of Lightbox as their counsel in the S.D.N.Y.

matter as well, referring to them in the plural tense and there being many calls with Mr.

Moldovsky and Mr. Ellner.

22.     It has been admitted that at least two recordings of these calls have

occurred by Mr. Ellner, and it has been misrepresented that he never called Plaintiffs on a

Pennsylvania phone number or when they were in Pennsylvania, both of which are false.

23.     Plaintiffs were not made aware that there were recordings until at or

around the time Lightbox filed a transcription as an Exhibit to Mr. Ellner's Affirmation in

Opposition to Statutory Charging Liens in a Southern District of New York ancillary interpleader

litigation on October 12, 2018.

24.     Upon information and belief there are as many as fifty to one hundred or

more of recordings based on how many recordings Mr. Ellner could have recorded of the phone

calls between him and Mr. Moldovsky.  Lightbox has never denied that there are more than two

and more than what they have so far disclosed.

25.     Over time more recordings were learned about.

26.     Lightbox has affirmed to the Court that they *only* called the Plaintiffs' New York line while in New York, however, this is prov-ably false.  At least some calls were from Lightbox to a Pennsylvania cell phone.

27.     Mr. Ellner appreciated that part of what made the Moldovsky Firm more affordable than other firms he had contacted was the Pennsylvania location (despite having an also having an office in New York).

28.     Ellner and Lightbox travel frequently to many different states and countries, and as such, their location at the time of various of the recordings is unknown some or more of the time.  However, based on vacation home ownership, relatives, business interests and other reasons, Mr. Ellner visited and spent time in other states in the relevant time period, which, like Pennsylvania, are also "two consent states" for wiretap statute purposes.  Such states are believed to include Florida, Nevada and/or California.  Of course, there may be others too.

29.     Lightbox and Mr. Ellner have already violated the Wiretap Act's provisions against making and distributing unauthorized recordings by 1) making them and 2) submitting them or transcripts of them to various courts already, including the USD Southern District of New York, New York Civil Supreme Court, and the Second Circuit Court of appeals and with intention for further use and likely further use already occurring.

30.     Lightbox has threated to release and play such illegal recordings to a jury with what they indicate will be devastating impact.  Plaintiffs are less concerned with such being dynamic but more that Defendants continued to present facts and evidence in misleading and false ways without legitimate purposes and thus causing more waste, fees, costs, expenses, etc. including in having to rebut, answer, explain away, etc.

31. Lightbox sought to insert them last minute as additional evidence in the Second Circuit Appeal by playing them on their counsel's laptop, where they would be further recorded by the Court's livestream and hosted on the internet indefinitely for availability to the public (without restrictions).  That request was denied.

32. It is still unknown just how many phone calls were recorded or transcribed, since only two have been turned over but Lightbox has never denied that there are others, and, actually, as indicated above at ¶ 24, they intimated that there were at least several others.

33. It is unknown when the recordings took place and what was said on them, however, it is believed that any such recordings do not of course include Brem Moldovsky doing or saying anything inappropriate because he did not and because if he did Lightbox certainly would have used them by now.

34. Plaintiffs sought to be provided with copies of the recordings, which Lightbox and Mr. Ellner (through counsel) refused to provide.

35. The Defendants possessed and still possesses recordings from various to numerous of these phone conversations recorded by Mr. Ellner without permission or consent by Mr. Moldovsky that are violative of the Pennsylvania Wiretap Act, and, depending on the location, of the wiretap statutes in the other locations from where Mr. Ellner was secretly recording.

### THE BUCKS COUNTY LITIGATION IN 2019

<u>Writ of Summons in this Case and Pre-Complaint Discovery Served Seeking Phone Calls and Transcripts in February 2018</u>

36. The Moldovsky Firm initiated a Bucks County Action (<u>Moldovsky v. Miller et al.</u>, Bucks County Court of Common Pleas No.: 2019-00793) on February 5, 2019

based in part on Mr. Ellner's violations of the Pennsylvania Wiretap Act (18 Pa. C.S.A. §§ 5701 et. seq., hereinafter the "Wiretap Act") by Ellner and his entities and related causes of action as well as other causes of action.

37.     Pre-Complaint discovery was served via email on February 5, 2019, and via process server along with the summons to Lightbox on February 27, 2019 with a narrow focus of gathering specific information about the recorded phone calls.

38.     Mr. Ellner hired Emma Klein, Esq. of Fox Rothschild to represent him in the matter.  On his behalf, Ms. Klein filed for a protective order to avoid responding to discovery, followed by a demand for a complaint.

39.     Mr. Ellner continued to evade discovery, particularly as to Mr. Ellner's recorded phone calls.  To date, the Moldovsky Firm has only seen partial transcripts of what is believed to be two separate phone calls, though it is believed others exist.   Lightbox has never denied allegations that there were many more recordings, and there could be recordings of all of the phone calls between Plaintiffs and Lightbox.  Lightbox has lied about the recordings by stating that they "never" called into a Pennsylvania line even though there are records that show otherwise and there is a recording from <u>Thanksgiving day while Plaintiffs were in Pennsylvania</u>.

40.     The extent to which Ellner was recording is still unknown for sure, as is Mr. Ellner's location when he was doing the various to many recordings, but there is reason to believe that some of the recordings of calls occurred from other two consent states and that even for the ones recorded in New York that under the circumstances here the interest of Pennsylvania is greater than the interests of New York and thus Pennsylvania's Wiretap Act will apply.  This is due in part that after years of litigation in New York these recordings have not helped but only

have been part of wasting much judicial, party and public time.  It appears that New York has no interest as it does not need more judicial, party and public time and energy wasted.

<u>Lightbox Counsel's Acknowledgement of Potential Illegality of Phone Recordings in August 2019</u>

41.     On August 20, 2019 Bucks County Judge Robert O. Baldi held an Oral Argument in that matter in part as to multiple motions for protective orders blocking discovery as to the phone calls.

42.     It was admitted by Ms. Klein to Mr. Moldovsky and a paralegal with the firm who was with Mr. Moldovsky at the time and with Mr. Miller nearby that the phone recordings were questionable enough that she and Fox Rothschild would not even handle them and that she had not listened to them.  She made clear that they were handling them as a sort of (or potential) contraband where they were careful not to possess or have custody over them.  She made a point of conveying this information apparently for a few reasons, including making it clear that she and her firm were treating these with care and working to avoid a claim of them holding, possessing, using, etc. these materials.

<u>Discontinuation of Claims in Bucks County Court</u>

43.     Among other issues, Mr. Ellner and Lightbox argued that the majority of the claims the Plaintiffs brought in Bucks County that included claims related to the breach of fiduciary duties of Lightbox and Mr. Ellner's counsel and Plaintiff's former counsel Jonathan R. Miller, were properly placed in New York and not in Pennsylvania.

44.     Judge Baldi directed that and per the applicable rules there was to be discovery as to jurisdiction and case and discovery planning.

45.     There were some attempts to coordinate on setting a calendar and such for discovery.

46.     For various reasons, including Mr. Miller's ongoing lack of malpractice insurance, on November 7, 2019, Plaintiffs filed a praecipe to discontinue and end the matter without prejudice pursuant to Pa. R. C. P. Rule 229 until the issues had ripened in New York.

47.     That time has sufficiently come at this point, and the Plaintiffs have initiated the matter of <u>Moldovsky v. Miller et al.</u>, Case No.: 1:21-cv-02452,in the Southern District of New York.  However, the claims related to Mr. Ellner and Lightbox's wiretap violations appear still better placed in Pennsylvania.

## ANDREW ELLNER'S EASTERN DISTRICT OF PENNSYLVANIA LAWSUIT

48.     On or about December 8, 2020 Mr. Ellner initiated a proceeding against Brem Moldovsky, L.L.C., Brem Moldovsky, and Gerald Pomerantz in the Eastern District of Pennsylvania for Malicious Prosecution and Abuse of Process related to the Bucks County Matter (<u>Ellner v. Moldovsky</u>, United States District Court for the Eastern District of Pennsylvania, Case No.: 2:20-cv-06190-KSM).

49.     A primary focus of Mr. Ellner in that Complaint is the Moldovsky Firm's ability to raise their legitimate wiretap violation claims against Mr. Ellner and Lightbox at all.

50.     Once again, the Plaintiffs find themselves in a compromised position because Mr. Ellner and Lightbox are privy to the extent and contents of the recordings, the circumstances surrounding them, where they were recorded and when, and Plaintiffs' information is more limited.

51.     Plaintiffs will be forced to spend time and resources on litigation to uncover information needed to defend against the Complaint.

52.     Mr. Ellner already uses that forum to espouse the continuing and repeated perjurious falsehood that he never called Plaintiffs at a Pennsylvania phone number (related to

wiretaps Mr. Ellner made), which is demonstrably false and has already been proven to Mr. Ellner in the course of the Bucks County litigation.  And, yet this is another example of an easily disproven, false allegation which Mr. Ellner and his counsel continue to propound. [1]

53.     This propounding includes that Mr. Ellner has initiated the Eastern District of Pennsylvania matter with an intent to utilize the alleged recorded phone calls within or related to the case, and otherwise as well.

54.     Lightbox thus perpetuates its violations of 18 Pa. C.S.A. § 5703 by using or endeavoring to use the recorded phone calls and transcripts of them.

55.     It is expected that the Plaintiffs will need to waste more time and resources rebutting further mistruths, misconstructions, the presentation of materials out of context or without full or fair context, etc. as Plaintiffs have had to do so far based on Defendants' actions, presentations and misleading assertions as stated above at ¶55.

## DAMAGES, LOSSES, AND IMPACTS TO THE PLAINTIFFS DUE TO THE VARIOUS USEAGES OF THE WIRETAPPED PHONE CALLS, AND RELIEF REQUESTED

56.     The Plaintiffs have suffered the negative impact and damage to their reputation of purposeful, willfully malicious, intentional and purposeful and/or recklessly negligent slanderous allegations and defamation of their character beyond what monetary damages can repair while causing damages as well.

---

[1] Mr. Ellner and Lightbox's obsession with relitigating claims that were dismissed by the Southern District of New York (Lightbox Ventures, LLC v. 3rd Home Limited, 2018 WL 5255169 (S.D.N.Y. October 22, 2018), which was affirmed by the Second Circuit Court of Appeals (https://www.ca2.uscourts.gov/decisions/isysquery/bff2aa54-54a3-4b48-8dd3-5de39063be5a/1/doc/18-3721_so.pdf#xml=https://www.ca2.uscourts.gov/decisions/isysquery/bff2aa54-54a3-4b48-8dd3-5de39063be5a/1/hilite/) is part of the basis and background of the Plaintiffs' Southern District of New York action,  Moldovsky v. Miller et al., US District Court for the Southern District of New York Case No: 1:21-cv-02452.

57.     Plaintiffs have suffered irreparable damages, lost time, costs and more due to Lightbox and Mr. Ellner's misusing, misconstruing and threatening with wiretapped recordings.

58.     Plaintiffs have spent much lost time, costs, expenses, fees and efforts to stop these and related wrongful activities and further of them.

59.     Much of Plaintiffs' lost time, but all of Plaintiffs' stress and distress will not be able to be adequately compensated economically for the wrongs done.

60.     Plaintiffs' losses include time, income, and fees due to the time lost attempting to uncover the extent of Mr. Ellner and Lightbox's wiretap violations.

61.     Plaintiffs' losses include income, time and fees due to the time lost litigating in an attempt to defend against the wrongful use of the recordings and to learn of them and to stop them being used in violation of the applicable law, wrongfully, wastefully, etc.

62.     The damages include damage for lost reputation, lost time and income trying to mitigate and counter it and more, as well as lost opportunity, profits and the other losses as stated herein as relate to these issues.

63.     Lost time is in excess of hundreds of hours of legal professional time with hourly for attorneys at $400 and for paralegals and law clerks at $150 or within those ranges and as confirmed by  Judge Cote in her Charging Lien decision. [2]

64.     Plaintiffs have been damaged in excess of $100,000.00 and are entitled by law and equity to all damages, including compensatory incidental, consequential, pecuniary, punitive, and statutory damages pursuant to the Pennsylvania Wiretap Act, attorney's fees and costs, and other related damages.

---

[2] Lightbox Ventures, LLC v. 3rd Home Limited, 2018 WL 5255169 (S.D.N.Y. October 22, 2018).

## PLEADING IN THE ALTERNATIVE, JOINT AND SEVERABLE LIABILITY, AND OTHER PROVISISIONS

65.     The totality of the Defendants' actual, anticipatory, apparent and implied breaches, negligence and failures and the resultant damages can be surmised from all permutations of the facts and elements plead at length herein and all facts and elements plead herein that are, by their nature, plead in the alternative.

66.     Based upon the facts alleged and/or incorporated herein, joint and several liability should be found against all Defendants on the counts set forth in the remainder of the Complaint where all Defendants are included (in the count) and where the Court deems appropriate.

67.     The Plaintiffs are foreseeable plaintiffs so that Defendants were and should have been aware of their losses, suffering and damaged due to their conduct.

68.     The Plaintiffs were not aware of various activities until times later than when they occurred.  For instance, the wiretapped phone calls were not disclosed until well after they were made, and it is anticipated that there are other phone calls and other activities that will be uncovered during discovery and litigation.

69.     All allegations herein that by their nature and/or as read with the rest of this pleading are in the alternative, are plead in the alternative.

## I.        FIRST CAUSE OF ACTION: DECLARATORY JUDGEMENT THAT PA WIRETAP ACT LAW IS APPLICABLE

70.     Plaintiff repeats and realleges each and every allegation set forth above and below as if fully set forth here.

71.     According to 18 Pa. C.S.A. § 5725, any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter shall have a civil

cause of action against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication; and shall be entitled to recover from any such person: (1) Actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation, or $1,000, whichever is higher. (2) Punitive damages. (3) A reasonable attorney's fee and other litigation costs reasonably incurred.

72.     Even though all the actual circumstance of Mr. Ellner and Lightbox's recordings are unknown, the prohibition against wiretapping in Pennsylvania can be applied to citizens of Pennsylvania who are wiretapped in Pennsylvania pursuant to prevailing caselaw.

73.     The application of the Pennsylvania Wiretap Act can be subject to the weighing and balancing of each relevant state's wiretap laws and considering various factors including the greatest protection of the person being wiretapped.  This can be the case for someone recording from New York when the other person is in Pennsylvania, depending on the circumstances of the case.  Specifically, the court can find that party to a call who is outside of Pennsylvania can be liable under the PA Wiretap Statute based on a weighing of damage and harm to the victim.  See, Mulder v. Wells Fargo Bank, N.A., 2018 WL 3750627 (W.D.P.A., July10, 2018) and Larrison v. Larrison, 750 A.2d 895 (Pa. Super. 2000); see also, Calcagno vs. Aidman, 20 Misc. 3d 1132(A) (Sup. Ct., Richmond Co. 2008)

74.     The Moldovsky Firm and Moldovsky know that Mr. Ellner had made calls into a Pennsylvania line (despite Mr. Ellner's perjury, Complaint at ¶30), because it had phone records to show that he did, which were shared with Mr. Ellner and his counsel.  The Plaintiffs know that Lightbox and Mr. Ellner proceeded to utilize those recordings to harm Plaintiffs (by wasting their time and resources, including forcing responses and explanations) over the course of three years in multiple Courts.

75.     Plaintiffs are wiretap victims and have suffered damages due to Defendants' violations of the Wiretap Act, 18 Pa. C.S.A. § 5703.

76.     Pursuant to 28 U.S. Code § 2201(a) and law, Plaintiff is entitled to a declaratory judgment against Defendants determining that the Pennsylvania Wiretap Act can be applied to the wiretaps that are known to have been made while Plaintiffs were in Pennsylvania.

77.     Plaintiff is entitled to a declaratory judgment against Defendants determining that the Wiretap Acts of  California, Florida and Nevada  can be applied to Defendants for violations of those statutes when Defendants were in those jurisdictions recording phone calls in violation of said statutes when Plaintiffs were in Pennsylvania.

WHEREFORE, Plaintiff requests declaratory judgment against the Defendants determining that the Pennsylvania Wiretap Act can be applied to the wiretaps that are known to have been made while Plaintiffs were in Pennsylvania and the relevant wiretap acts can be applied to the wiretaps that are known to have been made while Lightbox was in California, Florida and Nevada. .

## II.     SECOND CAUSE OF ACTION: VIOLATIONS OF THE PENNSYLVANIA WIRETAP ACT 18 PA. C.S.A. § 5703

78.     Plaintiff repeats and realleges each and every allegation set forth above and below as if fully set forth here.

79.     As described herein, Defendants committed violations of the Pennsylvania Wiretap Act, 18 Pa. C.S.A. § 5703 (the "Wiretap Act") in surreptitiously and non-consensually recording telephone conversations, transcribing telephone conversations, and distributed the recordings and/or transcriptions to others, the Court, and the public by filing certain transcripts of record.

80.     Upon information and belief, the use, possession, dissemination, etc. is more and more widespread than as alleged and currently known to Plaintiffs with more to be learned in discovery.

81.     The Defendants violated § 5703 (1)(2)and (3) of the Wiretap Act by (1) intentionally intercepting and recording at least two phone calls with the Plaintiffs, and then transcribing them; (2) intentionally and knowingly disclosing the recordings and/or the transcriptions to at least one other person (Lightbox's counsel Mr. Miller), and most likely others like in the case of the transcribed recording submitted to the Federal District and Circuit Court; and (3) intentionally using, possessing, disseminating, etc. the contents of the communication knowing that the information therein was obtained through wrongful interception, recording, usage, etc.

82.     By their counsel the Defendants violated § 5703 (2)and (3) of the Wiretap Act by (1) intentionally and knowingly disclosing the recordings and/or the transcriptions to at least one other person, and most likely others; and (2) intentionally using the contents of the communication knowing that the information therein was obtained through illegal interception.

83.     Upon information and belief (though it has not yet been confirmed by Discovery) Defendants violated § 5721.1 by disclosing the contents of at least one intercepted communication to others in this Commonwealth.

84.     According to 18 Pa. C.S.A. § 5725, any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication; and shall be entitled to recover from any such person: (1) Actual damages, but not less than liquidated damages computed at the rate of $100 a

16

day for each day of violation, or $1,000, whichever is higher. (2) Punitive damages. (3) A reasonable attorney's fee and other litigation costs reasonably incurred.

85.     Furthermore, Defendants have leveraged the intercepted recordings by threatening to distribute them further, and by insinuating about the contents of the recordings in violation of § 5703.

86.     As a direct and proximate cause of the aforementioned violations of the Wiretap Act, the Plaintiffs incurred losses, damages, waste of professional, attorney and paralegal time, costs, expenses, disparagement, damage to their reputation and other actual losses as plead herein.

87.     WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $75,000.00, including compensatory, incidental, consequential and punitive damages, statutory damages pursuant to 18 Pa. C.S.A. §5725, attorney's fees and costs, pre and post judgment interest, litigations costs, and any other relief the Court deems just and proper.

### III.     THIRD CAUSE OF ACTION AGAINST LIGHTBOX: PERMANENT INJUNCTION ESTOPPING THE FURTHER USE OF ANY WIRETAPPED PHONE CALLS AND TRANSCRIPTS

88.     Plaintiff repeats and realleges each and every allegation set forth above and below as if fully set forth here.

89.     Plaintiffs seek a permanent injunction barring Defendants from using, conveying, publicizing, sharing with others, disseminating and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law as plead herein as it is likely Plaintiffs will prevail on the merits, the extent of the harm and damages will be difficult to determine for the irreparable resulting harm and losses, and this will help maintain the status quo.

17

90.     So too, Plaintiffs seek that all such records, copies, transcriptions and such be ordered to be turned over to Plaintiffs.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $75,000.00, including compensatory, incidental, consequential and punitive damages, permanent injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest, litigations costs, and any other relief the Court deems just and proper.

## IV.     FOURTH CAUSE OF ACTION: VIOLATIONS OF THE WIRETAP STATUTES OF FLORIDA (FLA. STAT. CH. 934.03), CALIFORNIA STATUTE (CAL. PENAL CODE § 632) NEVADA STATUTE (NRS 200.620)

91.     Plaintiff repeats and realleges each and every allegation set forth above and below as if fully set forth here.

92.     Lightbox has been known to travel to other two-party consent states, including to California, Florida and Nevada.

93.     Pursuant to Fla. Stat. ch. 934.03 a person who "Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication; (b)    Intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when:1.    Such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or 2.    Such device transmits communications by radio or interferes with the transmission of such communication; (c)    Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that

18

the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; (d)   Intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection"  shall be subject to a fine for as much as three times the gross value of loss caused plus court costs and the costs of investigation and prosecution, reasonably incurred pursuant to Fla. Stat. ch. 934.41.

94.    Pursuant to Cal. Penal Code § 632, "A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation, or imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment. If the person has previously been convicted of a violation of this section or Section 631, 632.5, 632.6, 632.7, or 636, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000) per violation, by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment."

95.    Pursuant to NRS 200.620, "it is unlawful for any person to intercept or attempt to intercept any wire communication unless: (a) The interception or attempted interception is made with the prior consent of one of the parties to the communication." Pursuant to NRS 22.690, "1. A person who willfully and knowingly violates NRS 200.620 to 200.650, inclusive:(a) Shall be punished for a category D felony as provided in NRS 193.130.(b)

Is liable to a person whose wire or oral communication is intercepted without his or her consent for:(1) Actual damages or liquidated damages of $100 per day of violation but not less than $1,000, whichever is greater;(2) Punitive damages; and (3) His or her costs reasonably incurred in the action, including a reasonable attorney's fee, all of which may be recovered by civil action."

96. To the extent Lightbox has violated the wiretap statutes of these or other states, Lightbox should be liable for damages under them to the Plaintiffs.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $75,000.00, including statutory damages pursuant to Fla. Stat. ch. 934.41, Cal. Penal Code § 632, and/or NRS 200.690 the compensatory, incidental, consequential and punitive damages, permanent injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest, litigations costs, and any other relief the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand that judgment be entered in their favor and against Lightbox Ventures, L.L.C., Lightbox Capital Management, L.L.C. and Andrew Ellner as follows:

1. on the first cause of action, Plaintiff requests declaratory judgment against the Defendants determining that the Pennsylvania Wiretap Act (and the other two consent state's wiretap acts, as relevant) can be applied to the wiretaps that are known to have been made while Plaintiffs were in Pennsylvania;

2. on the second cause of action, awarding and ordering judgment against the Defendants in excess of $75,000.00, including compensatory, incidental, consequential and punitive damages, statutory damages pursuant to 18 Pa. C.S.A. §5725 attorney's fees and costs, pre and post judgment interest, litigations costs, and any other relief the Court deems just and proper; and

3. on the third cause of action, ordering judgment against the Defendants in excess of $75,000.00, including compensatory, incidental, consequential and punitive damages,  and a permanent injunction barring Defendants from using, conveying, publicizing, sharing with others, disseminating and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, as well as attorney's fees and costs, pre and post judgment interest, litigations costs, and any other relief the Court deems just and proper.

4. on the fourth cause of action, ordering judgment against the Defendants in excess of $75,000.00, including statutory damages pursuant to Fla. Stat. ch. 934.41, Cal. Penal Code § 632, and/or NRS 200.690 the compensatory, incidental, consequential and punitive damages, and a permanent injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, as well as attorney's fees and costs, pre and post judgment interest, litigations costs, and any other relief the Court deems just and proper.

Dated:       Bucks County, Pa
              March 22, 2021

                                        BREM MOLDOVSKY, L.L.C.
                                        By: Brem Moldovsky, Esq.
                                        100 N. 18th Street, Suite 100
                                        Philadelphia, Pa 19103
                                        *Attorney for Plaintiff*