**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BREM MOLDOVSKY, L.L.C., and | : | |
| BREM MOLDOVSKY, ESQUIRE, | : | Case No. |
| | : | 2:21-cv-01365-ER |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ANDREW ELLNER, | : | |
| LIGHTBOX VENTURES, LLC, | : | |
| and LIGHTBOX CAPITAL | : | |
| MANAGEMENT, LLC, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
<u>MOTION TO DISMISS, PURSUANT TO FEDERAL RULES 12(b)(2) AND 12(b)(6)</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………..iii

I.  PERTINENT "FACTS" ....................................................................................................... 1

   A.  The Parties ................................................................................................................... 1

   B.  The Lack of Contacts Between Defendants and the Commonwealth of Pennsylvania ....... 2

   C.  The Prior Attorney-Client Relationship Between the Moldovsky Plaintiffs and the
      Lightbox Defendants .................................................................................................... 3

   D.  The Alleged Recording of Phone Calls ........................................................................ 4

   E.  Other Litigation Between the Parties. ........................................................................... 5

      1.  The Bucks County Action ....................................................................................... 6

      2.  The Ellner Dragonetti Action .................................................................................. 8

II.  THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE THE
     COURT LACK PERSONAL JURISDICTION OVER THE DEFENDANTS. ..................... 8

   A.  Standard for Motions to Dismiss for Lack of Jurisdiction, Under Federal Rule of Civil
      Procedure 12(b)(2) ....................................................................................................... 8

   B.  Neither General nor Specific Jurisdiction Exists in Pennsylvania Over Defendants. ....... 10

      1.  General Jurisdiction Does Not Exist Over the Three Defendants.................................. 11

      2.  Specific Jurisdiction Is Lacking. .................................................................................. 12

III.  EVEN IF JURISDICTION EXISTED, BECAUSE THE COMPLAINT FAILS TO SET
     FORTH CLAIMS UPON WHICH RELIEF MAY BE GRANTED, IT MUST STILL BE
     DISMISSED. ................................................................................................................ 19

   A.  Standard for Rule 12(b)(6) Motions. ............................................................................ 19

   B.  The Moldovsky Plaintiffs' First Cause of Action Must Be Dismissed Because It
      Improperly Seeks Relief Solely for Past Conduct, and Is Duplicative of the Plaintiffs'
      Non-Declaratory Judgment Claims.................................................................................. 20

   C.  The Moldovsky Plaintiffs' Second Cause of Action Must Be Dismissed. ......................... 22

1.   The Second Cause of Action Fails, Because the Pa. Wiretap Act Does Not Apply to Interceptions and Recordings of Calls With Pennsylvania Residents, Made By a Person in Another State............................................................................................................. 23

2.   The Second Cause of Action Also Fails Because It is Barred by the Statute of Limitations. .............................................................................................................. 27

D.   The Moldovsky Plaintiffs' Fourth Cause of Action Must Be Dismissed. ......................... 29

1.   The Fourth Cause of Action Fails Because Plaintiffs Have Not Alleged Sufficient Facts to Show That the Claims Are Plausible. ......................................................... 29

2.   The Fourth Cause of Action Also Fails Because Its Claims Are Time-Barred. ............ 31

E.   The Third Cause of Action, Which Seeks an Injunction, Fails Because the Moldovsky Plaintiffs Cannot Prevail on the Merits............................................................. 32

IV.   CONCLUSION............................................................................................................. 33

# TABLE OF AUTHORITIES

## Cases

*Action Mfg. Co. v. Simon Wrecking Co*., 375 F. Supp.2d 411 (E.D. Pa. 2005) ............................ 9

*Allaham v. Naddat*, 635 Fed. Appx. 32  (3d Cir. Dec. 15, 2015) .................................................. 9

*Andele v. Administrative Off. of U.S. Cts.*, 569 Fed. Appx. 80 (3d Cir. 2014) ............................ 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................ 19, 20, 29

*Ball v. Ehlig*, 70 Pa. D. & C.4th 160 (Pa. C.P., Montg. Co. 2005) ......................................... 25, 26

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544(2007) ............................................................ 19, 20

*Bristow v. Clevenger*, 80 F.Supp.2d 421 (W.D. Pa. 2000) ........................................................ 27

*Broughal v. First Wachovia Corp.*, 14 Pa. D. & C.4th 525 (Pa. C.P., Northamp. Co. 1992) ....... 25

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462  (1985) ........................................................ 13, 14

*Caruso v. Life Ins. Co. of N. Am.*, Civ. A. No. 00-2329, 2000 U.S. Dist. LEXIS 9164 (E.D. Pa.
   June 29, 2000) ......................................................................................................................... 27

*Ciba-Geigy Corp. v. Bolar Pharmaceutical Co*., 747 F.2d 844 (3d. Cir. 1984) .......................... 32

*Commonwealth v. Houseman*,  986 A.2d 822 (Pa. 2009) ............................................................ 26

*Cortiss v. O'Brien*, No. 05-4799, 200 Fed. Appx. 80 (3d Cir. Sept. 20, 2006) ........................... 20

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ............................................................................ 11

*Danziger & DeLiano, LLP v. Morgan Verkemp LLC*, 948 F.3d 124 (3d Cir. 2020) ........ 12, 16, 18

*Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287 (3d Cir. 1996) ....................................................... 8

*Emmes Co., LLC v. SAP Am, Inc*., Civ. A. No. 21-0019, 2021 U.S. Dist. LEXIS 81782  (E.D. Pa.
   Apr. 29, 2021) ......................................................................................................................... 21

*Fine v. Checcio*, 870 A.2d 850 (Pa. 2005) .................................................................................. 28

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) .......................................................... 19

*Goodyear Dunlop Tires Operations., S.A. v. Brown*, 564 U.S. 915 (2011) .................................. 11

*In re Amarin Corp. PLC Sec. Litig.,* Civ. A. No. 3:19cv-06601 (BRM)(TMJB), 2021 U.S. Dist. LEXIS 59840 (D.N.J. Mar. 29, 2021) .................................................................................. 6

*In re Congoleum Corp.*, 426 F.3d 675 (3d Cir. 2005) .................................................................. 6

*Isaacs v. Arizona Bd. of Regents*, No. 14-3985, 608 Fed. Appx. 70 (3d Cir. Apr. 7, 2015) ......... 11

*Jarzyna v. Home Props., L.P.,* 763 F.Supp.2d 743 (E.D. Pa. 2011) ............................................ 20

*Jaworowski v. Ciasulli*, 490 F.3d 331 (3d Cir. 2007) ................................................................ 28

*Kelly v. Business Info. Grp, Inc.*, Civ. A. No. 15-6688, 2017 U.S. Dist. LEXIS 96953 (E.D. Pa. June 22, 2017) .................................................................................................................... 6

*Kimball v. Countrywide Merchant Servs.*, Civ. A. No. 04-3466. 2005 U.S. Dist. LEXIS 1817 (E.D. Pa. Feb. 8, 2005) ....................................................................................................... 10

*Koken v. Pension Benefit Guar. Corp.*, 430 F.Supp.2d 493 (E.D. Pa. 2006) ................... 8, 10, 11

*Larrison v. Larrison*, 750 A.2d 895 (Pa. Super. 2000) ................................................... 24, 25, 27

*Lasala v. Marfin Popular Bank Pub. Co.,* No. 10-1712, 410 Fed. Appx. 474 (3d Cir. Jan. 7, 2011) .................................................................................................................................... 9

*Leone v. Cataldo*, 574 F.Supp.2d 471 (E.D. Pa. Aug. 11, 2008) ................................................. 9

*L.M. Gen. Ins. Co. v. Lebrun*, 470 F.Supp.3d 440 (E.D. Pa. July 1, 2020) ................................ 21

*Marks v. Bell Tel. Co. of Pa.*, 331 A.2d 424 (Pa. 1975) ............................................................. 22

*Marten v. Godwin*, 499 F.3d 290 (3d Cir. 2007) ....................................................... 11, 12, 13, 14

*McCulligan v. Pennsylvania State Police*, 123 A.3d 1136 (Pa. Commw. 2015) .......................... 27

*Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93 (3d Cir. 2004) ...................................................... 9

*Morill v. Weaver*, 224 F.Supp.2d 882 (E.D. Pa 2002) ............................................................... 32

*Mr. Sandless Franchise, LLC v. Karen Cesaroni LLC*, 498 F.Supp.3d 725 (E.D. Pa. 2020) 11, 12, 14

*Nkansah v. Kleinbard LLC*, No. 19-4472, 2020 U.S. Dist. LEXIS 33094, 2020 WL 920269 (E.D. Pa. Feb. 26, 2020) .................................................................................................................. 21

*O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312 (3d Cir. 2007) ........................................ 16, 18

iv

*Oliver v. Sid Bernstein, Ltd.*, Civ. A. No. 06-4471, 1996 U.S. Dist. LEXIS 18359 (E.D. Pa. Dec. 10, 1996).................................................................................................................. 9

*Papasan v. Allain*, 478 U.S. 265 (1986) ...................................................................... 20

*Perelman v. Adams*, 945 F.Supp.2d 607 (E.D. Pa. 2013) ......................................... 6, 27

*Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001) ...................................................... 12

*Robinson v. Johnson*, 313 F.3d 128 (3d. Cir. 2002) .................................................... 27

*Shepherd v. Coyle*, Civ. A. No. 21-1591, 2021 Dist. LEXIS 111545 (E.D. Pa June 15, 2021) .. 21

*Simmers v. Packer*, 36 Pa. D. & C.4th 182 (Pa. C.P., Dauphin Co. 1997) .................................. 22

*State Auto Ins. Cos. v. Summy*, 234 F.3d 131 (3d Cir. 2000)....................................... 21

*Stauffer v. Bell Atlantic,* Civ. A. No. 01-CV-2892, 2002 U.S. Dist. LEXIS 25718 (E.D. Pa. Feb. 20, 2002)........................................................................................................... 28

*Sturgeon v. PharMerica Corp.*, 438 F.Supp.3d 246 (E.D. Pa. 2020) ............................................ 6

*Sullivan v. A.W. Chesterton, Inc.,* 384 F.Supp.3d 532 (E.D. Pa. 2019)....................................... 11

*Temple Univ. v. White*, 94 F.2d 201 (3d Cir. 1991) ...................................................... 32

*Utz Quality Foods, LLC v. Dirty South BBQ Co.*, Civ. A. No. 20-1146, 2020 U.S. Dist. LEXIS 133258 (E.D. Pa. July 28, 2020) ................................................................ 9

*Vetrotext Certainteed Corp. v. Consolidated Fiber Glass Prods. Co*., 75 F.3d 147 (3d.Cir. 1996) .......................................................................................................................... 10

*Warden v. Kahn*, 160 Cal. Rptr. 471 (Cal. Ct. App. 1979)........................................... 31

*Warren Gen. Hosp. v. Amgen Inc*., 643 F.3d 77 (3d Cir. 2011) ............................. 20, 29

*Williams v. Roc Nation*, LLC, Civ. A. No. 20-03387, 2020 U.S. Dist. LEXIS 195173 (E.D. Pa. Oct. 21, 2020).......................................................................................................... 9

## Statutes

18 Pa. C.S. § 5701.......................................................................................................... 20

18 Pa. C.S. § 5703................................................................................................ 20, 21, 22

18 Pa. C.S. § 5725 .................................................................................................... 20, 21, 22

42 Pa. C.S. § 5322 .................................................................................................... 10

42 Pa C.S. § 5524 .................................................................................................... 27

Cal. Code Civ. Proc. § 340(a) .................................................................................. 31

Cal. Penal Code § 632 .............................................................................................. 29, 31

Cal. Penal Code § 637.2 ........................................................................................... 31

Fla Stat. Ch. 934.03 ................................................................................................. 29, 31

Fla. Stat. § 934.10 .................................................................................................... 31

Nev. Rev. Stat. Ann. § 11.190 ................................................................................. 31

Nev. Rev. Stat. § 200.620 ........................................................................................ 29, 31

Nev. Rev. Stat. § 200.690 ........................................................................................ 31

North Carolina General Statutes §14-155 ............................................................... 25

NY CLS Penal § 250.00(1) ...................................................................................... 26

V.T.C.A., Penal Code §16.02 .................................................................................. 26

**Rules**

Fed. R. Civ. P.  4 ..................................................................................................... 10

Fed. R. Civ. P. 12(b)(6) ........................................................................................... passim

Defendants, Andrew Ellner, Lightbox Ventures LLC, and Lightbox Capital Management, LLC (collectively, "Defendants"), hereby submit this memorandum of law in support of their motion to dismiss the Complaint filed by Plaintiffs, Brem Moldovsky, L.L.C., and Brem Moldovsky, Esquire (collectively, the "Moldovsky Plaintiffs"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## I.      PERTINENT "FACTS"

The following facts are either alleged in the Moldovsky Plaintiffs' Complaint (the "Complaint"), or have been sworn to in an affidavit or declaration submitted contemporaneously with Defendants' current Motion to Dismiss, Pursuant to Federal Rule 12(b)(2) and 12(b)(6).  By citing to the Complaint, Defendants do not adopt or admit any of its allegations, and reserve their right to deny any such allegations at a later appropriate time.

### A.      The Parties

Plaintiff Brem Moldovsky, L.L.C., (the "Moldovsky Firm") is a law firm with offices in Pennsylvania, New York and New Jersey. (Complaint, ¶ 4).  Plaintiff Brem Moldovsky is an attorney with the Moldovsky Firm, who also has offices in Pennsylvania, New York and New Jersey; Moldovsky resides in Bucks County, Pennsylvania.  (Complaint, ¶¶ 3, 21).  Defendant Andrew Ellner resides at 210 West 77th Street, Apt. 8W, New York, New York 10024. (Complaint, ¶ 6).  Defendant Lightbox Ventures LLC is owned by Ellner and has a registered address at 210 West 77th Street, Apt. 8W, New York, New York 10024 (Complaint, ¶ 7), while defendant Lightbox Capital Management, LLC, also owned by Ellner, has a registered address at 24 West 40th Street, Second Floor, New York, New York 10024. (Complaint, ¶ 8).  Lightbox Ventures LLC and Lightbox Capital Management, LLC will be referred to collectively as the "Lightbox entities."

**B.      The Lack of Contacts Between Defendants and the Commonwealth of Pennsylvania**

The Moldovsky Plaintiffs concede that Defendants, Ellner and the Lightbox entities, are all citizens of the State of New York. (Complaint, ¶ 10).  More specifically, Ellner is the sole member of the Lightbox entities and resides in New York, New York; the Lightbox entities are New York Limited Liability Companies, incorporated and with their principal places of business in New York.  (*See* Haines Declar., Exhibit 6 [Ellner Affidavit,[1] ¶¶ 5-6]).  All three Defendants lack contact with the Commonwealth of Pennsylvania upon which personal jurisdiction may be based.

Ellner and the Lightbox entities do not conduct any business in Pennsylvania, or work out of, or maintain, any office in the Commonwealth. (Haines Declar., Exhibit 6 [Ellner Affidavit, ¶¶ 23, 25]). Likewise, Ellner and the Lightbox entities do not regularly service clients in Pennsylvania, and are not licensed to do business in the Commonwealth.  (Haines Declar., Exhibit 6 [Ellner Affidavit, ¶¶ 26-27]). Indeed, none of the Defendants derive any income from Pennsylvania.  (Haines Declar., Exhibit 6 [Ellner Affidavit, ¶ 32]).

Moreover, Ellner and the Lightbox entities do not own or rent property in the Commonwealth, or have, or maintain, any Pennsylvania bank accounts.  (Haines Declar., Exhibit 6 [Ellner Affidavit, ¶¶ 28, 30]).  They do not have, or maintain, any Pennsylvania employees or agents, or any telephone listings or mailing addresses in the Commonwealth. (Haines Declar., Exhibit 6 [Ellner Affidavit, ¶¶ 29, 31]).  Indeed, Ellner and the Lightbox entities have no

---

[1]      The Declaration of Clifford E. Haines has been filed contemporaneously with Defendants' Current Motion to Dismiss.  In a subsequent portion of this Memorandum, Defendants have requested that the Court take judicial notice of the Haines Declaration and its attached exhibits, which are all time-stamped documents filed with a court in Pennsylvania.  The Court's agreement to take such judicial notice encompasses the Ellner Affidavit, which is one of the exhibits to the Haines Declaration.

systematic and general business contact with Pennsylvania.  (Haines Declar., Exhibit 6 [Ellner Affidavit, ¶ 33]).

### C.    The Prior Attorney-Client Relationship Between the Moldovsky Plaintiffs and the Lightbox Defendants

In January 2017, the Moldovsky Plaintiffs began interacting with Defendants, Ellner and the Lightbox entities. (Complaint, ¶ 14).  In January 2017 and into February 2017, discussions occurred between them concerning terms of legal representation. (Complaint, ¶ 17). Beginning in February 2017, the Moldovsky Firm began representing the Lightbox entities in connection with an underlying litigation involving a failed joint venture for a global real estate venture, which Ellner believed had millions of dollars of potential value. (Complaint, ¶¶ 14, 15).  That litigation was captioned *Lightbox Ventures LLC v. 3rd Home Ltd., et al.*, No. 16-cv-2379 (S.D.N.Y.) (the "New York Federal Litigation").  (*See* Haines Declar., Exhibit 6 [Ellner Affidavit, ¶ 7]).

No aspect of the relationship between the Moldovsky Plaintiffs and the Defendants ever occurred in Pennsylvania.  Instead, all aspects occurred in New York, where the Moldovsky Plaintiffs maintain a law office.  (*See* Haines Declar., Exhibit 6 [Ellner Affidavit, ¶¶10-12]).

All meetings Ellner had with the Moldovsky Plaintiffs occurred in the Moldovsky Plaintiffs' New York office, a coffee shop near Plaintiffs' New York office, or in depositions or mediations held in offices in New York.  (Haines Declar., Exhibit 6 [Ellner Affidavit, ¶ 12]). Every telephone call Ellner received from the Moldovsky Plaintiffs was received while Ellner was in New York, and every telephone call Ellner placed to the Moldovsky Plaintiffs was placed while Ellner was in New York.  (Haines Declar., Exhibit 6 [Ellner Affidavit, ¶¶ 13-14]). Each time Ellner telephoned the Moldovsky Plaintiffs he either dialed the telephone number for Plaintiff's New York office, or Moldovsky's cell phone, at the instruction of Moldovsky or the Moldovsky Plaintiffs' administrative assistant.  (Haines Declar., Exhibit 6 [Ellner Affidavit, ¶

15]).   All telephone calls Ellner placed to the Moldovsky Plaintiffs was to discuss their representation of the Lightbox entities in connection with the New York Federal Litigation. (Haines Declar., Exhibit 6 [Ellner Affidavit, ¶ 16]).   No part of the Defendants' relationship with the Moldovsky Plaintiffs occurred anywhere other than in New York.   (Haines Declar., Exhibit 6 [Ellner Affidavit, ¶ 20]).

### D.      The Alleged Recording of Phone Calls

During the period in which the Moldovsky Plaintiffs negotiated representation terms with and/or represented the Lightbox entities in the New York Federal Litigation, beginning in January 2017 and ending in the first third of 2018, Defendants allegedly recorded phone calls between Ellner and Moldovsky, without the Moldovsky Plaintiffs' knowledge or consent. (Complaint, ¶¶ 1, 14, 20).

Although the Complaint alleges that Mr. Ellner "*could have* recorded" as many as one hundred or more phone calls with Moldovsky (Complaint, ¶ 24), the Complaint identifies only two allegedly recorded phone calls, one of which occurred on Thanksgiving Day [November 23], 2017. (Complaint, ¶¶ 21, 22).[2]   Mr. Ellner's telephone bill, attached to his sworn affidavit, indicates that the call he placed to Moldovsky on Thanksgiving Day 2017 was placed from New York, and the number Ellner dialed was (212) 563-3370**,** a New York exchange, which was the telephone number for the Moldovsky Plaintiffs' New York office.   (Haines Declar., Exhibit 6 [Ellner Affidavit, ¶¶ 16, 19 & Ex. 1]).   The Moldovsky Plaintiffs do not dispute that Ellner always phoned Moldovsky from New York; indeed, they appear to concede that point.   (*See* Complaint, ¶¶ 26, 73).

---

[2]      Although the Complaint asserts that Ellner and the Lightbox entities have "never denied" there were more than two recorded phone calls (Complaint, ¶ 24), the Complaint contains no factual allegations concerning any other such calls.

According to the Complaint, the Moldovsky Plaintiffs did not become aware that certain telephone calls were allegedly recorded until October 12, 2018, when Defendants attached transcripts as an exhibit to an affirmation by Mr. Ellner, filed as part of an ancillary interpleader proceeding in the New York Federal Litigation. (Complaint, ¶ 23). According to the Complaint, Defendants have used the transcripts by submitting them to various New York courts: the federal district court for the Southern District of New York, the New York Civil Supreme Court, and the Second Circuit Court of Appeals. (Complaint, ¶ 29).

The Complaint alleges that Defendants frequently travel and, during at least part of the relevant time period, their location was unknown. (Complaint, ¶ 28). According to the Moldovsky Plaintiffs, during the relevant time period, Mr. Ellner visited or spent time in other states, and those states may have included Florida, Nevada and/or California. (Complaint, ¶ 28).

### E.      Other Litigation Between the Parties.

The Moldovsky Plaintiffs' Complaint discusses at length the following two judicial actions, which involve some, or all, of the current parties. To the extent that time-stamped and court-filed documents from those two actions, identified below, are submitted in support of Defendants' current Rule 12(b)(2) motion, as exhibits to the Declaration of Clifford E. Haines, they are unquestionably proper, since the Court considers affidavits and evidence in resolving issues of personal jurisdiction.

To the extent that the time-stamped court-filed documents identified below are submitted as exhibits to the Haines Declaration in support of Defendants' current Rule 12(b)(6) motion, Defendants' request that the Court take judicial notice of the exhibits identified below. A district court is permitted to take judicial notice of, and/or consider unquestionably authentic documents and public records, including court-filed documents, when resolving a Rule 12(b)(6) motion to

dismiss, without converting the motion to one for summary judgment. *See Sturgeon v. PharMerica Corp.*, 438 F.Supp.3d 246, 257 (E.D. Pa. 2020) (Rufe, J.) ("Courts may take judicial notice of public records, including 'publicly available records and transcripts from judicial proceedings.'  In particular, publicly available records from other judicial proceedings may be judicially noticed in the context of a motion to dismiss."); *see also In re Amarin Corp. PLC Sec. Litig.*, Civ. A. No. 3:19cv-06601 (BRM)(TMJB), 2021 U.S. Dist. LEXIS 59840 at *21 (D.N.J. Mar. 29, 2021) ("taking notice of matters of public record does not convert a motion to dismiss into a motion for summary judgment . . . ."); *Kelly v. Business Info. Grp, Inc.*, Civ. A. No. 15-6688, 2017 U.S. Dist. LEXIS 96953 at *5 (E.D. Pa. June 22, 2017) (Strawbridge, J.) (court may take judicial notice of, and consider public records of other judicial proceedings without converting a motion to dismiss to one for summary judgment) (citing *In re Congoleum Corp*., 426 F.3d 675, 679 n.2 (3d Cir. 2005)); *Perelman v. Adams*, 945 F.Supp.2d 607, 612 (E.D. Pa. 2013) (Robreno, J.) (taking judicial notice of four other legal actions involving the plaintiff and pertaining to transaction involved in the case before the court). The exhibits identified below are documents filed with the state and federal district courts of Pennsylvania, are unquestionably authentic, and are offered subject to the declaration of an attorney.  Moreover, the Moldovsky Plaintiffs apparently consider these two actions integral to their current Complaint, as they devote considerable space to discussion of the cases.  (*See* Complaint, ¶¶ 13, 36-47, 48-55).

### 1.    The Bucks County Action

On February 5, 2019, Mr. Moldovsky and the Moldovsky Firm initiated a state court action in Bucks County, Pennsylvania, captioned *Moldovsky v. Miller, et al.*, No. 2019-00793 (Pa. C.P. Bucks Co.) (the "Bucks County Action"). (Complaint, ¶ 36).  Defendants comprised three of the four named defendants in the Bucks County Action, which was commenced by writ

of summons on February 5, 2019.   (*See* Haines Decl., Exhibit 1 [Writ of Summons]). The original complaint in the Bucks County Action was filed on May 28, 2019, and contained a claim alleging Defendants' violation of the Pennsylvania Wiretap Act, which is nearly identical to the one stated in the Complaint in this action.  However, the Bucks County complaint contained no claim asserting the violation of the wiretap acts of other states, such as Florida, California or Nevada.  (*See* Haines Decl., Exhibit 2 [Bucks County Compl.]). Three successive and similar amended Complaints followed in the Bucks County Action.  (*See* Haines Decl., Exhibit 3 [Docket Sheet, Bucks County Action]).  Each was filed in response to preliminary objections by the various defendants, including Defendants, who repeatedly filed preliminary objections challenging personal jurisdiction.  An example of those jurisdictional preliminary objections is Defendants' Preliminary Objections to the Third Amended Complaint, filed in the Bucks County Action on October 14, 2019.  (*See* Haines Decl., Exhibit 7 [P.O.s to Bucks County Third Am. Compl.]).

When the fourth amended complaint was filed in the Bucks County Action, on October 16, 2019, Defendants' names were, for the first time, absent from the caption and any mention of, or claim for, alleged wiretapping was omitted. Indeed, no claims remained against Defendants as of that date. (*See* Haines Decl., Exhibit 4 [Bucks County Fourth Am. Compl.]).  A similar fifth amended complaint was filed in the Bucks County Action on November 6, 2019, likewise, asserting no claims against Defendants. (*See* Haines Decl., Exhibit 3 [Docket]).  On November 8, 2019, Moldovsky and the Moldovsky Firm filed a praecipe to discontinue and end all remaining claims in the Bucks County Action.  (*See* Haines Decl., Exhibit 5 [Praecipe]). Because of the repeated filing of amended complaints, as well as the Moldovsky Plaintiffs' voluntary dismissal of the claims against Defendants, Defendants' jurisdictional preliminary

objections were never resolved by order of the Bucks County court.  (*See* Haines Decl., Exhibit 3 [Docket Sheet, Bucks County Action]).

### 2.      The Ellner Dragonetti Action

On or about December 8, 2020, Andrew Ellner commenced an action against Mr. Moldovsky and the Moldovsky Firm (as well as their attorney, Gerald J. Pomerantz, Esquire) in this Court.  The action is captioned as *Ellner v. Moldovsky*, Civ. A. No. 2:20-cv-06190-ER (E.D. Pa.) (the "Dragonetti Action").  (Complaint, ¶ 48; *See* Haines Decl., Exhibit 8 [Dragonetti Action Compl.]). The complaint in the Dragonetti Action is comprised of two counts: one for wrongful use of civil proceedings, and one for abuse of process.  The Dragonetti Action challenges the initiation and continuation of the underlying Bucks County Action, asserting that personal jurisdiction over Defendants was absent in Bucks County, and that the Bucks County Action lacked proper factual and legal bases and was litigated in order to harass Ellner.  (Complaint, ¶ 48; *See* Haines Decl., Exhibit 8 [Dragonetti Action Compl., ¶¶ 45-48, 52]). Gerald J. Pomerantz, Esquire, the third defendant in the Dragonetti Action, is an attorney licensed to practice law in Pennsylvania, with his office located in Pennsylvania; he worked with the Moldovsky Plaintiffs in prosecuting the underlying Bucks County Action. (*See* Haines Decl., Exhibit 8 [Dragonetti Action Compl., ¶¶ 4-5]).

## II.      THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE THE COURT LACK PERSONAL JURISDICTION OVER THE DEFENDANTS.

### A.      Standard for Motions to Dismiss for Lack of Jurisdiction, Under Federal Rule of Civil Procedure 12(b)(2)

Once a defendant challenges personal jurisdiction by a Rule 12(b)(2) motion to dismiss, the plaintiff bears the burden of proving the court's jurisdiction over the moving defendant by affidavits or other competent evidence.  *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996); *Koken v. Pension Benefit Guar. Corp.*, 430 F.Supp.2d 493, 497-98 (E.D. Pa. 2006)

(Robreno, J.) ("plaintiff must respond with actual proofs, not mere allegations") (quotation omitted).  If the district court conducts an evidentiary hearing on the defendant's Rule 12(b)(2) motion, the plaintiff must prove jurisdiction over the moving defendant by a preponderance of the evidence.  *Allaham v. Naddat*, 635 Fed. Appx. 32, 37 (3d Cir. Dec. 15, 2015); *Leone v. Cataldo*, 574 F.Supp.2d 471, 477 (E.D. Pa. Aug. 11, 2008) (Brody, J.); *see Oliver v. Sid Bernstein, Ltd.*, Civ. A. No. 06-4471, 1996 U.S. Dist. LEXIS 18359 at *3 (E.D. Pa. Dec. 10, 1996) (Padova, J.) ("Plaintiff must eventually establish jurisdiction by a preponderance of the evidence, 'either at a pretrial evidentiary hearing or at trial.'") (quotation omitted).

If the district court does not conduct an evidentiary hearing on the defendant's Rule 12(b)(2) motion, the plaintiff's allegations are taken as true and any factual disputes pertinent to the jurisdictional determination are resolved in the plaintiff's favor.  *Lasala v. Marfin Popular Bank Pub. Co.,* No. 10-1712, 410 Fed. Appx. 474, 476 (3d Cir. Jan. 7, 2011); *Utz Quality Foods, LLC v. Dirty South BBQ Co.*, Civ. A. No. 20-1146, 2020 U.S. Dist. LEXIS 133258 at *1-2 (E.D. Pa. July 28, 2020) (Beetlestone, J.).  However, absent a hearing, the plaintiff retains the burden of making out a *prima facie* case of personal jurisdiction.  *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004); *see also Williams v. Roc Nation*, LLC, Civ. A. No. 20-03387, 2020 U.S. Dist. LEXIS 195173 at *6 (E.D. Pa. Oct. 21, 2020) (Robreno, J).  A plaintiff makes out a *prima facie* case, where he presents specific facts, which establish, with reasonable particularity, sufficient contacts between the non-resident defendant and the forum state to permit the court's exercise of jurisdiction.  *Utz Quality Foods,* 2020 U.S. Dist. LEXIS 133258 at *2; *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp.2d 411, 418 (E.D. Pa. 2005) (Brody, J.).

**B.      Neither General nor Specific Jurisdiction Exists in Pennsylvania Over Defendants.**

Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), a federal district court is permitted to exercise jurisdiction over non-resident defendants, like Ellner and the Lightbox entities, to the extent provided by the law of the state in which the district court sits.[3]  Here, that state is Pennsylvania.  While Pennsylvania has a long-arm statute identifying certain bases upon which personal jurisdiction over non-residents is authorized, the Commonwealth's long-arm statute also provides that such jurisdiction extends "to  the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with the Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S. § 5322(b); *see Kimball v. Countrywide Merchant Servs.*, Civ. A. No. 04-3466. 2005 U.S. Dist. LEXIS 1817 at *5-6 (E.D. Pa. Feb. 8, 2005) (Robreno, J.) (quoting statute).

Because Section 5322(b) defines the reach of personal jurisdiction under Pennsylvania law as "coextensive with the limits placed on the states by the federal Constitution," Pennsylvania district courts look to federal constitutional doctrine to determine if jurisdiction may be exercised over particular out-of-state defendants. *Koken,* 430 F.Supp.2d at 499 (Robreno, J.) (quoting *Vetrotext Certainteed Corp. v. Consolidated Fiber Glass Prods. Co*., 75 F.3d 147, 150 (3d.Cir. 1996)).  Under that constitutional doctrine,

> [A] two-part test is used to consider whether the exercise of personal jurisdiction is permissible under the Constitutional limits: (1) the defendant must have "purposefully established "minimum contacts" in the State, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); and (2) the exercise of jurisdiction must be consistent with "traditional notions of fair play and substantial justice."  *International Shoe Co. v.*

---

[3]      According to Rule 4(k)(1)(A),"[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."

> *State of Washington Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal citations omitted).

*Koken*, 430 F.Supp.2d at 499; *see also, e.g., Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).   These principles are reflected in the two types of personal jurisdiction that may be exercised by courts over out-of-state defendants: general jurisdiction and specific jurisdiction.

### 1.    General Jurisdiction Does Not Exist Over the Three Defendants.

"General jurisdiction grants courts the ability to hear 'any and all claims' against out-of-state defendants 'when their affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum state." *Isaacs v. Arizona Bd. of Regents*, No. 14-3985, 608 Fed. Appx. 70, 74 (3d Cir. Apr. 7, 2015) (internal quotations from *Goodyear Dunlop Tires Operations., S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *Mr. Sandless Franchise, LLC v. Karen Cesaroni LLC*, 498 F.Supp.3d 725, 733 (E.D. Pa. 2020) (Robreno, J.) (similar, quotations omitted).

An individual defendant is "at home" in the state where he is domiciled: for such an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear*, 564 U.S. at 924).  A corporate defendant is "at home" in two possible states: for a corporation, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler*, 571 U.S. at 137 (brackets and ellipsis in original, quotation omitted); *see, e.g., Sullivan v. A.W. Chesterton*, *Inc.,* 384 F.Supp.3d 532, 534, 537 (E.D. Pa. 2019) (Robreno, J.) (Daimler holds that, except in extraordinary circumstances, general jurisdiction over foreign corporation limited to forums where it is incorporated, and/or has its principal place of business).

11

In light of the foregoing, it is clear that this Court lacks general jurisdiction over Defendants Ellner and the Lighthouse entities.  As is conceded in the Complaint, these three Defendants are all citizens of the State of New York and are not "at home" in the Commonwealth of Pennsylvania.  (Complaint, ¶ 10); Ellner is domiciled in New York, and the Lighthouse entities are incorporated and have their principal places of business in New York. (*See* Haines Decl., Exhibit 6 [Ellner Affidavit, ¶¶ 5,6]).  Therefore, under the foregoing law, this Court lacks general jurisdiction over all three of the Defendants; moreover, the Complaint does not reference any "extraordinary circumstances" (nor, are there any), which would change that result.

### 2.      Specific Jurisdiction Is Lacking.

### a.      The Law Regarding Specific Jurisdiction

Specific jurisdiction "is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant 'should reasonably anticipate being haled into court' in that forum." *Mr. Sandless,* 498 F.Supp.3d at 733 (quoting *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001)). The determination of whether specific jurisdiction is proper involves a three-part inquiry:

> "'First, the defendant must have "purposefully directed [its] activities" at the forum.'  Second, the plaintiff's claims 'must "arise out of or relate to"' the defendant's activities. And third, exercising personal jurisdiction must not 'offend traditional notions of fair play and substantial justice.'"

*Mr. Sandless*, 498 F.Supp.3d at 733 (brackets in original; quoting *Danziger & DeLiano, LLP v. Morgan Verkemp LLC*, 948 F.3d 124, 129-30 (3d Cir. 2020)); *see also, e.g., Marten,* 499 F.3d at 296 (similar).  As the Third Circuit has held, this test "prevents a defendant from "be[ing] haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Marten,* 499

F.3d at 297 (brackets in original; quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

> **b.**   **Specific Jurisdiction Does Not Exist in Pennsylvania Over the Lightbox Entities.**

Ellner identifies all the ways in which he and the Lightbox entities have *not* established contacts with Pennsylvania.  (Haines Declar., Exhibit 6 [*see, e.g.*, Ellner Affidavit, ¶¶ 10-16, 20, 23-34).  Regardless, the sole mention of personal jurisdiction in the Complaint appears in paragraph 13, where the Moldovsky Plaintiffs state their apparent view of the basis for this Court's specific jurisdiction over all three Defendants.  In pertinent part, paragraph 13 states:

> Lightbox[4] has availed itself of and /*sic*/ the Commonwealth's jurisdiction including by the process of finding and hiring counsel, preparing for and then initiating an Eastern District of Pennsylvania action, *Ellner v. Moldovsky*, Case No. 2: 20-cv-06190-KSM, wherein Lightbox intends to use the recordings [of telephone calls], information about the recordings, and misrepresentations about the recordings, within the litigation and without it . . . .

(Complaint, ¶ 13).  With respect to the Lighthouse entities, the factors identified in paragraph 13 fail to fulfill even the first of the three elements for specific jurisdiction identified above, as they do not reflect that the Lightbox entities purposefully directed any activity at the Pennsylvania forum.

To the extent that paragraph 13 refers to the Lightbox entities as having "availed" themselves of specific jurisdiction as a result of the "process of finding and hiring counsel" in connection with "initiating an Eastern of District of Pennsylvania action" [the Dragonetti Action], the Moldovsky Plaintiffs are mistaken.  The Lightbox entities have absolutely no involvement with the Dragonetti Action:  The Dragonetti Action is being litigated by one

---

[4]   "Lightbox" is the term used in the Complaint to refer collectively to Ellner and the Lightbox entities.  (*See* Complaint, ¶ 9).

plaintiff, Ellner.  (*See* Haines Decl., Exhibit 8 [Dragonetti Action Compl.]).  That being so, the Lightbox entities are subject neither to this Court's general jurisdiction, or its specific jurisdiction.  Accordingly, Defendants' jurisdictional Motion to Dismiss must be granted, and the Lightbox entities dismissed.

**c.       Specific Jurisdiction Does Not Exist in Pennsylvania Over Defendant Ellner.**

Although defendant Ellner *is* the sole plaintiff in the Dragonetti Action also being litigated in this Court, the Complaint's Paragraph 13 does not present factors that meet the three-part specific jurisdiction test.[5]

As the Third Circuit has noted, the standard for specific jurisdiction prevents a defendant from bei[ing] haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Marten*, 499 F.3d at 297 (quoting *Burger King Corp.*, 471 U.S. at 475).  As a preliminary matter, any assumption by this Court of personal jurisdiction over Ellner should not be grounded in his commencement of the Dragonetti Action in Pennsylvania, because that activity was fortuitous and did not reflect purposeful action directed toward Pennsylvania.

Ellner, a New York citizen, was named by the Moldovsky Defendants as a defendant in the Bucks County Action, along with the Lightbox entities.  At that time, Ellner sought to avoid litigating in Pennsylvania, a state with which he had no contacts, through the repeated filing of preliminary objections raising the Bucks County court's lack of personal jurisdiction over him (as well as over the Lightbox entities).  (*See, e.g,* Haines Decl., Exhibit 7 [POs to Bucks County Third Am. Compl., filed Oct. 14, 2019]).  However, those jurisdictional preliminary objections

---

[5]      "'First, the defendant must have "purposefully directed [its] activities" at the forum.' Second, the plaintiff's claims 'must "arise out of or relate to"' the defendant's activities.  And third, exercising personal jurisdiction must not 'offend traditional notions of fair play and substantial justice.'" *Mr. Sandless*, 498 F.Supp.3d at 733 (quotations omitted).

were never resolved by an Order of the Bucks County court (Haines Decl., Exhibit 3 [Docket]), due to the repeated filing by the Moldovsky Plaintiffs of amended Bucks County complaints. Eventually voluntary there was a voluntary dismissal of all claims against Ellner (and the Lightbox entities) as of the filing of the Moldovsky Plaintiffs' *fourth* amended Bucks County complaint on October 16, 2019 (*see* Haines Decl., Exhibit 4 [Bucks County Fourth Am. Compl.]).  (*See* Haines Decl., Exhibit 4 [POs to Bucks County Third Am. Compl.]).  After being forced to engage in the Bucks County Action, a case where he regarded the court as lacking any jurisdiction over him and  regarded the claims as having no merit; where he was required to file jurisdictional preliminary objections to four complaints within a period of less than six months; and where the claims against him were then abruptly dismissed, Ellner decided to obtain judicial recognition of the improper and harassing conduct of the Bucks County Action by filing a legal action against Moldovsky, his firm and their lawyer in the Bucks County Action.  Again, unfortunately, Ellner was forced to litigate in Pennsylvania, because Mr. Pomerantz, an attorney for Moldovsky and his firm in the Bucks County Action, could only be sued here.  (*See* Haines Decl., Exhibit 8 [Dragonetti Action Compl., ¶ 4]).  Far from purposeful, any relationship between Ellner and the courts of Pennsylvania has been fortuitous and his participation in the Dragonetti Action should not be a factor pointing to the exercise of jurisdiction over Ellner.

Even if Ellner's commencement of the Dragonetti Action constituted some purposeful direction of activity to the Pennsylvania forum (which, it did not), the Moldovsky Plaintiffs' current wiretapping claims do not "arise out of or relate to" the commencement of the Dragonetti Action, as is required by the three-part specific jurisdiction test discussed previously in this Memorandum.  (*See* n. 5, *supra*).  Clearly, the Moldovsky wiretapping claims do not arise out of Ellner's litigation of the Dragonetti Action.  Indeed, the wiretapping claims were first asserted in

the Bucks County Action (*see, e.g.,* Haines Decl., Exhibits 2, 4 [Bucks County Action Complaints]), which predated the initiation of the Dragonetti Action.

While the Third Circuit has never provided an express definition of that phrase "arise out of," it has held that the "related to" element of the phrase requires "a closer and more direct causal connection than that provided by the but-for test." *O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312, 323 (3d Cir. 2007). The Third Circuit has spoken of the "*quid pro quo*" involved in the application of specific jurisdiction: in return for the contacts with the forum, and dependent on the number (and type) of such contacts and the benefits received from them, the state may impose, as a *quid pro quo*, certain obligations, which may include the exercise of personal jurisdiction. *Id.* The Third Circuit has further explained the "relate to" portion of the "arise out of or relate to" element of specific jurisdiction, in terms of that *quid pro quo*:

> The relatedness requirement's function is to maintain balance in this reciprocal exchange. In order to do so, it must keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations. The causal connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the *quid pro quo* proportional and personal jurisdiction reasonably foreseeable.

*Id.*; *see, e.g.*, *Danziger & DeLlano, LLP*, 948 F.3d at 130 ("The defendant must have benefitted enough from the forum state's laws to make the burden of facing litigation there proportional to those benefits.")

Here, the Court's exercise of personal jurisdiction over Ellner would not "keep the *quid pro quo* proportional and personal jurisdiction reasonably foreseeable." No but-for causation exists between Ellner's initiation of the Dragonetti Action and the Moldovsky Plaintiffs' wiretapping claims. Moreover, Ellner's purposeful direction of activity has overwhelmingly been to *New York*, rather than Pennsylvania. He is domiciled in New York and is the only member of

two corporate entities, the Lightbox entities, which are incorporated and have their principal places of business in New York.  He sought a New York lawyer to represent the Lightbox entities in the New York Federal Action, and retained the Moldovsky Plaintiffs, who have an office in New York.  He met with the Moldovsky Plaintiffs only in New York, and spoke with them on the telephone only from New York.  His telephone discussions with the Moldovsky Plaintiffs were solely about the New York legal representation, and he called them on their New York telephone number, unless instructed by the Moldovsky Plaintiffs, or their administrative assistant, to call on Moldovsky's cell phone. Any recording Ellner made of telephone conversations with the Moldovsky Plaintiffs was done while he was physically in New York. (*See* Haines Decl., Exhibit 6 [Ellner Affidavit at ¶¶ 5, 6, 10-17, 20]).[6]

A holding that jurisdiction over Ellner is proper here would not be "proportional." In contrast to the purposeful direction of the latter activities to New York, any purposeful direction by Ellner toward this Pennsylvania forum is minimal, at best.  Ellner's participation in the Bucks County Action for less than a year, only because he was named as a defendant and was unable to have his jurisdictional preliminary objections ruled on, cannot be regarded as purposeful. His initiation of the Dragonetti Action, which involves different claims and parties from this one,[7] in Pennsylvania was not truly purposeful either, since he selected a Pennsylvania forum only

---

[6]     Indeed, neither Ellner nor the Lightbox entities have any business contacts with Pennsylvania.  (*See* Haines Decl., Exhibit 6 [Ellner Affidavit at ¶¶ 5, 6, 23-34)]).

[7]     In the Dragonetti Action, the parties include Mr. Pomerantz, who is not a party to this action.  The Dragonetti Action parties do not include the Lightbox entities, who are Defendants here. The Dragonetti and abuse of process claims in the Dragonetti Action focus on the improper initiation and continuation of the Bucks County Action, which allegedly lacked jurisdiction over Defendants, had no factual or legal basis, and was initiated and continued for the purpose of harassment.  (*See* Haines Decl., Exhibit 8 [Dragonetti Action Compl., at ¶¶ 44-50)]).  In contrast, this action focuses on alleged wiretapping by Defendants, which the Moldovsky Plaintiffs assert violated not only the Pa. Wiretap Act, but also the wiretap acts of Florida, California, and Nevada (a claim not made in the Bucks County Action).

because one of the defendants could not be reached anywhere else.  Ellner never anticipated that this minimal court activity, his only contact with Pennsylvania, would cause him to be haled into a forum with which he so obviously has little connection.  A finding of personal jurisdiction is not warranted here.

The Third Circuit recently addressed an action that raised similar issues.  *See Danziger & DeLlano, LLP,* 948 F.3d 124.  The Danziger Firm, located in Texas, referred a *qui tam* action to the Verkamp Firm, located in Ohio.  The Verkamp firm initiated the *qui tam* action in this district court, with the case ultimately settling.   When the Danziger Firm learned of the settlement, by which the Verkamp Firm had collected millions of dollars in legal fees, it sued the Verkamp Firm in this court, seeking a referral fee it asserted had been verbally promised.  The Verkamp Firm successfully challenged personal jurisdiction.  On appeal, one of the Danziger Firm's arguments was that the Verkamp Firm's litigation of the *qui tam* case in Pennsylvania constituted the aiming of activity at the Pennsylvania forum, justifying the exercise of jurisdiction.  The Third Circuit rejected that argument, briefly stating:

> [T]ort claims still "require[] a  closer and more direct causal connection than" but-for causation.  The defendant must have benefited enough from the forum state's laws to make the burden of facing litigation there proportional to those benefits.
>
> *     *     *     *
>
> But all [the litigation of the *qui tam* case] shows is but-for causation, which is not enough to support personal jurisdiction. *See O'Connor*, 496 F.3d at 323.

*Danziger*, 948 F.3d at 130 (citations omitted).  Here, unlike *Danziger*, but-for causation is lacking. Moreover, if the proportionality of benefit to burden was not high enough to justify personal jurisdiction in *Danziger*, it most certainly is not sufficient to justify jurisdiction here.

Because Ellner is subject neither to general or specific jurisdiction by this Court, Defendants' jurisdiction Motion to Dismiss must be granted, and Ellner dismissed from this action.

### III.      EVEN IF JURISDICTION EXISTED, BECAUSE THE COMPLAINT FAILS TO SET FORTH CLAIMS UPON WHICH RELIEF MAY BE GRANTED, IT MUST STILL BE DISMISSED.

#### A.      Standard for Rule 12(b)(6) Motions.

Even if personal jurisdiction over Ellner and the Lightbox entities existed, the Court must still dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6); the Four Causes of Action contained in the Complaint fail to state claims upon which relief may be granted.

The standard to be applied in resolving a Rule 12(b)(6) motion to dismiss has been summarized by the Third Circuit:

> Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). After *Twombly* and *Ashcroft v. Iqbal*, [556 U.S. 662], 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), "conclusory or bare-bones allegations will no longer survive a motion to dismiss: threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler,* 578 F.3d at 210 (internal quotation marks and citation omitted). While the complaint "does not need detailed factual allegations . . . a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

19

*Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).  In order for a complaint to survive a Rule 12(b)(6) motion to dismiss, its factual allegations "must be enough to raise a right to relief above the speculative level."  *Jarzyna v. Home Props., L.P.,* 763 F.Supp.2d 743, 746 (E.D. Pa. 2011) (Robreno, J.) (quoting *Twombly*, 550 U.S. at 555).   Indeed, the United States Supreme Court has clarified that:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation omitted).

In resolving a 12(b)(6) motion, the court views the well-pleaded facts in the light most favorable to the plaintiff, but "a plaintiff's legal conclusions are not entitled to deference." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (cited in *Twombly*, 550 U.S at 555).

**B.**   **The Moldovsky Plaintiffs' First Cause of Action Must Be Dismissed Because It Improperly Seeks Relief Solely for Past Conduct, and Is Duplicative of the Plaintiffs' Non-Declaratory Judgment Claims.**

The Moldovsky Plaintiffs' First Cause of Action seeks a declaratory judgment that the prohibitions against wiretapping, in Section  5725 and 5703 of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S. §§ 5701, *et seq* (the "Pa. Wiretap Act"), bar the past conduct of Defendants in allegedly telephoning the Moldovsky Plaintiffs by dialing a Pennsylvania number; recording the content of such calls, and making improper use of the recordings.  (*See* Complaint, ¶¶ 72-75).

As such, the First Cause of Action fails as a proper declaratory judgment claim. Under the established law of this Circuit, "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct." *Cortiss v. O'Brien*, No. 05-4799, 200 Fed. Appx. 80, 84 (3d Cir. Sept. 20, 2006);

*see Shepherd v. Coyle*, Civ. A. No. 21-1591, 2021 Dist. LEXIS 111545 at \*5-6 (E.D. Pa June 15, 2021) (Beetlestone, J.) (same).  Instead, "[d]eclaratory judgments are meant to define the legal rights and obligations of the parties in anticipation of some *future* conduct." *L.M. Gen. Ins. Co. v. Lebrun*, 470 F.Supp.3d 440, 457 (E.D. Pa. July 1, 2020) (Marston, J.) (quoting *Andele v. Administrative Off. of U.S. Cts.*, 569 Fed. Appx. 80, 83 (3d Cir. 2014)); brackets and emphasis in original).  Because the demand for a declaratory judgment in the First Cause of Action focuses solely on the supposed past conduct of Defendants, it is improper and should be dismissed.

The First Cause of Action is additionally improper because it is duplicative of the Moldovsky Plaintiffs' non-declaratory judgment claims, more specifically, the claims asserted by their Second Cause of Action.  As described below, the Second Cause of Action seeks to impose liability on Defendants for the same past conduct, under the same Sections (5703 and 5725) of the Pa. Wiretap Act.  Resolution of the claims asserted in the First Cause of Action will necessarily require resolution of the issues in the Second Cause of Action.  Such duplicative declaratory judgment claims must fail.  As the court stated in *Emmes Co., LLC v. SAP Am, Inc.*, Civ. A. No. 21-0019, 2021 U.S. Dist. LEXIS 81782 at \*16-17 (E.D. Pa. Apr. 29, 2021) (Pappert, J.),

> The Third Circuit Court of Appeals has also instructed that "[a] federal court should . . . decline to exercise its discretionary jurisdiction" over declaratory judgment actions "when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation." *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000). Courts routinely dismiss claims for declaratory relief that are duplicative of other claims already alleged, including negligence and breach of contract claims. *See, e.g.,* [*LM Gen.*, 470 F.Supp.3d at 456]; *Nkansah v. Kleinbard LLC*, No. 19-4472, 2020 U.S. Dist. LEXIS 33094, 2020 WL 920269 at \*7 (E.D. Pa. Feb. 26, 2020).

In light of the foregoing, the First Cause of Action does not constitute a permissible claim for declaratory judgment.  The Defendants' Rule 12(b)(6) motion must be granted, and the First Cause of Action dismissed.[8]

## C.    The Moldovsky Plaintiffs' Second Cause of Action Must Be Dismissed.

The Moldovsky Plaintiffs' Second Cause of Action asserts a claim under Section 5725 of Pa. Wiretap Act, for the supposed violation of the Act's Section 5703.  Section 5703 criminalizes the intentional interception by a person of any wire, electronic or oral communication; the intentional disclosure of the contents of any such communication derived from an intentional interception; and the intentional use of the contents of any such communication, with knowledge that it was obtained through interception of a wire, electronic or oral communication.  Section 5725 provides a private right of civil action for any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of the Pa. Wiretap Act.[9]  According to the Complaint, Defendants violated Section 5703 by secretly intercepting and recording "at least two phone calls with the Plaintiffs," transcribing the recordings and disclosing them. (Complaint, ¶ 81).  According to the Complaint, during the period in which the Moldovsky Plaintiffs negotiated representation terms with and/or represented the Lightbox entities in the

---

[8]     While the caption of the First Cause of Action indicates that it is directed to the application of the Pa. Wiretap Act, the First Cause of Action contains a single, final paragraph asserting the Moldovsky Plaintiffs' entitlement to a declaratory judgment against Defendants for violations of the wiretap statutes of *California, Florida and Nevada*, based on similar conduct. (Complaint, ¶ 77). This request for declaratory judgment fails for the same reasons discussed above, as it is solely focused on purported past conduct of Defendants, and is duplicative of other claims, more specifically those in the Complaint's *Fourth* Cause of Action.  To the extent that this request is considered a declaratory judgment claim distinct from the one discussed above, it should likewise be dismissed.

[9]     A criminal conviction is not a prerequisite for a claim for civil liability under the Pa. Wiretap Act.  The civil trial court must simply determine, at some point, that the Wiretap Act was violated.  *See Simmers v. Packer*, 36 Pa. D. & C.4th 182, 185-86 (Pa. C.P., Dauphin Co. 1997) (quoting *Marks v. Bell Tel. Co. of Pa.*, 331 A.2d 424, 430 n.6 (Pa. 1975).

New York Federal Litigation, beginning in January 2017 and ending in the first third of 2018, Defendants allegedly recorded phone calls between Ellner and Moldovsky, without the knowledge or consent of the Moldovsky Plaintiffs. (Complaint, ¶¶ 1, 20). The Complaint minimally identifies only two allegedly recorded phone calls, one of which occurred on Thanksgiving Day [November 23], 2017. (Complaint, ¶¶ 21, 22).[10] Regardless, Defendants allegedly submitted the recordings, or transcripts of the phone calls, to certain New York courts: the federal district court for the Southern District of New York, the New York Civil Supreme Court, and the Second Circuit Court of Appeals. (Complaint, ¶ 29).

> 1. **The Second Cause of Action Fails, Because the Pa. Wiretap Act Does Not Apply to Interceptions and Recordings of Calls With Pennsylvania Residents, Made By a Person in Another State.**

Although Moldovsky practices law and has offices in New York, according to the Complaint, he resides in Bucks County, Pennsylvania, where he maintains a home office. (Complaint, ¶¶ 4, 5, 12, 21). The Complaint suggests that Moldovsky was located in his home, or elsewhere in Pennsylvania, at the time of the two recorded calls and that Defendants initiated the recorded calls by dialing a Pennsylvania cell phone number with a (610) area code. (Complaint, ¶¶ 12, 20-22). The Complaint does *not* allege that the recorded calls were placed by Defendants from a Pennsylvania location. Indeed, the Complaint appears to concede that the calls at issue were placed by Ellner in New York, where he and the Lightbox entities resided.

---

[10]     Although the Complaint alleges that Mr. Ellner "*could have* recorded" as many as fifty to one hundred or more phone calls with Moldovsky, and that Ellner and the Lightbox entities have "never denied" there were more than two recorded phone calls (Complaint, ¶ 24), the Complaint contains no factual allegations concerning any such phone calls other than the two calls discussed above. In light of the dearth of such factual allegations, any claim concerning the recording of calls other than the two identified in the Complaint is not facially plausible but, rather insufficient and speculative. Under prevailing law, a speculative claim should be dismissed or disregarded. *See Warren*, 643 F.3d at 84; *see also Iqbal,* 556 U.S. at 678.

(*See* Complaint, ¶¶ 10, 26; see ¶ 73: "This can be the case for someone recording from New York when the other person is in Pennsylvania . . . .").

Based on its allegations, the Second Cause of Action, stated under the Pa. Wiretap Act, is improper: Courts have consistently held that the Pa. Wiretap Act does not reach the interception and recording of phone calls with Pennsylvania residents, when that interception and recording is carried out by a person in a different state.  In *Larrison v. Larrison*, 750 A.2d 895 (Pa. Super. 2000), the Superior Court affirmed the admission of a recorded telephone conversation at a custody trial in Pennsylvania.  The appellant wife had placed the relevant phone call, from Pennsylvania, to her sister-in-law in New York; the sister-in-law secretly recorded the call.  The wife challenged the recording on the ground that it was prepared, and used at trial, in violation of the Pa. Wiretap Act.

The Pennsylvania Superior Court characterized the issue before it has involving a substantive conflict of law, noting that, unlike Pennsylvania, New York's own wiretap law permitted a party to record his or her own telephone conversations.  In resolving that conflict, the Superior Court applied a flexible approach, which:

> gives the state having the most interest in the question paramount control over the legal issues arising from a particular factual issue, thereby allowing the forum to apply the policy of the jurisdiction most intimately concerned with the outcome.

*Larrison*, 750 A.2d at 895.  In affirming the decision to admit the recording at trial, the Superior Court concluded:

> Here, New York possessed the greater interest in allowing its citizens to record telephone conversations lawfully with only the consent of the sender or receiver.  While the Commonwealth has an interest in protecting its citizens from having telephone conversations recorded without proper consent, we, as the courts of this Commonwealth, have no power to control the activities that occur within a sister state.  [The sister-in-law] did not violate any

24

> New York state law in obtaining the recording of the telephone
> conversation. Pennsylvania has no state interest in a recording of a
> telephone conversation placed to New York even if the recording
> is later used in the Pennsylvania Courts.

*Id.* at 898.  The result was the same in two other cases, where Pennsylvania courts faced a similar issue.  In *Broughal v. First Wachovia Corp.*, 14 Pa. D. & C.4th 525 (Pa. C.P., Northamp. Co. 1992), the court held, on preliminary objections, that the Pa. Wiretap Act did not apply to the secret recording and disclosure of two phone conversations with a Pennsylvania citizen, by persons in North Carolina. The court did not expressly apply a conflict of law approach, but reached the same result, considering both the failure of the Pa. Wiretap law to "clearly, concisely and definitely state the locus of the conduct which [it] intends to conduct." *Id.* at 531 (brackets added), and the fact that the recording and disclosure at issue was legal under North Carolina law, which permitted a person to record a phone call in which he participated.[11]   In dismissing the complaint, the court stated:

> Criminal responsibility could not attach if the conduct outside the
> Commonwealth did not constitute an offense at the place of
> commission, and there was no intentional or knowing result caused
> within the Commonwealth. The "result" under review here is the
> interception and recording, not the conversation.  It is undisputed
> that the interception and recording took place in North Carolina
> only.  It follows that under Pennsylvania law of torts, foreign
> interception and recording of a conversation cannot form the basis
> for a civil complaint for unlawful interception under this
> Pennsylvania statute.

*Id.* at 532-33.

Finally, in *Ball v. Ehlig*, 70 Pa. D. & C.4th 160 (Pa. C.P., Montg. Co. 2005), aff'd without op., 2005 Pa. Super. LEXIS 4622 (Oct. 5, 2005), the court sustained preliminary

---

[11]     According to the court, North Carolina wiretap law (North Carolina General Statutes §14-155) permitted recording by a telephone subscriber on its own telephone lines. *Broughal*, 14 Pa. D. & C.4th at 531 & n.4.

objections, based on two grounds: (i) a lack of jurisdiction over the defendants; and (ii) the inapplicability of the Pa. Wiretap Act to secret interception and taping by parties located in Texas, of telephone conversations with persons in Pennsylvania.  As in *Larrison*, the *Ehlig* court regarded the issue as one of conflict of law, since, unlike the Pa. Wiretap Act, the pertinent Texas law (V.T.C.A., Penal Code §16.02) permitted the recording of a telephone conversation with the consent of one party to the call. Just as in *Larrison*, the *Ehlig* court concluded that the Texas law should be applied:

> [D]efendants were situated in Texas at all times relevant to the conduct of this litigation and the recording of the interstate conversations took place in Texas.  The state of Texas has a greater interest in allowing its citizens to record telephone conversations legally with only the consent of one party.  Additionally, we find that, since defendants were located in Texas when the recording took place and the actual act of recording took place in Texas, they were justified in expecting Texas law to apply to their actions.

*Ehlig,* 70 Pa. D. & C.4th at 169.  *Cf. Commonwealth v. Houseman*, 986 A.2d 822, 842 (Pa. 2009) (recording of Pennsylvania citizen's confession in Virginia was governed by, and in accordance with, Virginia law and was therefore admissible in Pennsylvania).

There is no basis to distinguish this case from the authorities described above. Although Moldovsky is a resident of Pennsylvania and was allegedly in Pennsylvania at the time the two phone calls identified in the Complaint were purportedly intercepted and recorded, Defendants were in New York.  Assuming for the purposes of this Motion that Defendants did intercept and record the two calls, they did so in New York, and had the right to expect that their conduct would be governed by New York law.

Moreover, any such conduct is legal under New York law, which permits the recording of a telephone call with the consent of the sender *or* receiver of the call.  *See* NY CLS Penal § 250.00(1).  As stated in *Larrison* and reflected in the other decisions identified above, New York

has the greater interest here in permitting its citizens to engage in lawful activity by recording telephone conversations, with the consent only one of the parties to the calls.  "While the Commonwealth has an interest in protecting its citizens from having telephone conversations recorded without proper consent," Pennsylvania has "no power to control the activities that occur within a sister state." *Larrison* 750 A.2d at 898.

For all the foregoing reasons, Defendants' motion to dismiss the Second Cause of Action must be granted.

### 2.    The Second Cause of Action Also Fails Because It is Barred by the Statute of Limitations.

The Second Cause of Action (civil claim for violation of the Pa. Wiretap Act) must also be dismissed because it is barred by the statute of limitations.  Although the Federal Rules do not expressly authorize the practice, in this Circuit, it is proper to raise a statute of limitations defense by way of a motion to dismiss if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Perelman v. Adams*, 945 F.Supp.2d 607, 614 (E.D. Pa. 2013) (Robreno, J) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d. Cir. 2002)); *Caruso v. Life Ins. Co. of N. Am.*, Civ. A. No. 00-2329, 2000 U.S. Dist. LEXIS 9164 at *3 (E.D. Pa. June 29, 2000) (Yohn, J.) (similar). On its face, the Complaint demonstrates that the claims in the Second Cause of Action are time-barred.

While the Pa. Wiretap Act itself sets forth no limitations period for civil claims, courts have held that the applicable statute of limitations is two years, pursuant to 42 Pa C.S. § 5524(7).[12] *McCulligan v. Pennsylvania State Police*, 123 A.3d 1136, 1140 (Pa. Commw. 2015) (quoting *Bristow v. Clevenger*, 80 F.Supp.2d 421, 428 (W.D. Pa. 2000)); *see also Stauffer v. Bell*

---

[12]     42 Pa C.S. § 5524(7) sets forth a general two-year limitation period applicable to "any other action or proceeding to recover damages . . . founded on negligent, intentional, or otherwise tortious conduct, or any other proceeding sounding in trespass . . . ."

*Atlantic,* Civ. A. No. 01-CV-2892, 2002 U.S. Dist. LEXIS 25718 at *15n.4 (E.D. Pa. Feb. 20, 2002).

According to the Complaint, secret interception and recording of telephone calls between Ellner and the Moldovsky Plaintiffs occurred during the course of the Moldovsky Plaintiffs' representation of the Lightbox entities in connection with the New York Federal Litigation.  That time period began in or about January, 2017 and ended in the first third of 2018. (*See* Complaint, ¶¶ 1, 14, 20).  Using the Complaint's date of April 30, 2018 (the "first third of 2018") as the latest date any recorded calls could possibly have occurred, the Pa. Wiretap Act claims in the Second Cause of Action  are clearly untimely, since nearly three years passed between April 30, 2018 and the commencement of this action on March 23, 2021.

Under Pennsylvania state law,[13] the statute of limitations may be tolled by the application of the discovery rule, where, despite the exercise of reasonable diligence, the plaintiff is unable to know of his or her injury or its cause.  *Perelman,* 945 F.Supp.2d at 615 (quotation omitted); *see also Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005) (same).  The Moldovsky Plaintiffs likely had the discovery rule in mind, when they alleged in the Complaint that they "were not made aware" that their calls were being recorded until October 12, 2018, when Defendants attached at least one transcript as an exhibit to a court filing.  (Complaint, ¶¶ 22-23). The latter allegation may well be insufficient to establish the application of the discovery rule in light of the absence of facts concerning Plaintiffs' reasonable diligence.  However, *even crediting the allegation* (for purposes of Defendants' current Motion only), the Second Cause of Action remains untimely:

---

[13]     Statute of limitations issues are treated by federal courts as substantive matters, and federal courts are therefore bound by governing state law. *Perelman*, 945 F.Supp.2d at 614 (citing *Jaworowski v. Ciasulli*, 490 F.3d 331, 333 (3d Cir. 2007)).

about 2.5 years elapsed between October 12, 2018 and the commencement of the current action on March 23, 2021.

In light of the foregoing, Defendants' Motion to Dismiss must be granted, and the Second Cause of Action dismissed as time-barred.

### D. The Moldovsky Plaintiffs' Fourth Cause of Action Must Be Dismissed.

#### 1. The Fourth Cause of Action Fails Because Plaintiffs Have Not Alleged Sufficient Facts to Show That the Claims Are Plausible.

The Fourth Cause of Action must be dismissed because the Complaint fails to set forth sufficient facts to show that the Fourth Cause of Action sets forth any plausible claims. As the Court is aware, in order for a plaintiff's complaint to survive a Rule 12(b)(6) motion, it must both allege sufficient factual matter to show that the claim is facially plausible, and support the reasonable inference that the defendant is liable for the misconduct asserted. Such factual matter must show more than a sheer possibility that the defendant has acted improperly: to the extent that a complaint pleads facts that are "merely consistent with" the defendant's liability, a Rule 12(b)(6) motion will succeed. *See Warren*, 643 F.3d at 84; *Iqbal*, 556 U.S. at 678.

The Moldovsky Plaintiffs' Fourth Cause of Action asserts Defendants' liability under the wiretap statutes of Florida (Fla Stat. Ch. 934.03), California (Cal. Penal Code § 632), and Nevada (NRS 200.620). However, the Fourth Cause of Action fails to meet the standard set forth directly above. Not only does the Complaint fail to plead sufficient facts to show that the Fourth Cause of Action constitutes a facially plausible claim; the factual allegations included do not support even the possibility that Defendants acted improperly. The allegations in the Complaint, which are apparently intended to support the Fourth Cause of Action, are limited to the following:

(i)      Ellner and Lightbox travel frequently to many different states and countries, such that their location is unknown to the Moldovsky Plaintiffs some of the time (Complaint, ¶ 28);

(ii)      "Based on vacation home ownership, relatives, business interests and other reasons, Mr. Ellner visited and spent time in other states in the relevant time period, which, like Pennsylvania, are also two consent states" for wiretap statute purposes (Complaint, ¶ 28);

(iii)      "Such states are believed to include Florida, Nevada and/or California (Complaint, ¶ 28);

(iv)      "Plaintiff is entitled to a declaratory judgment . . . determining that the Wiretap Acts of California, Florida and Nevada can be applied to Defendants for violations of those statutes when Defendants were in those jurisdictions recording phone calls in violation of said statutes when Plaintiffs were in Pennsylvania"  (Complaint, ¶ 77);

(v)      "Lightbox has been known to travel to other two-party consent states, including California, Florida and Nevada" (Complaint, ¶ 92); and

(vi)      "To the extent Lightbox has violated the wiretap statutes of these or other states. Lightbox should be liable for damages under them to the Plaintiffs." (Complaint, ¶ 96).[14]

Because these factual allegations fail to show that the Fourth Cause of Action sets forth any facially plausible claims, and they do not enable the Court to draw the reasonable inference that Defendants are liable for misconduct under the wiretap statutes of California, Florida and Nevada, the Fourth Cause of Action fails.  Defendants' Motion to Dismiss must be granted, and the Fourth Cause of Action dismissed.

---

[14]      While the Complaint contains three paragraphs quoting the provisions of the wiretap acts of Florida, California and Nevada, those paragraphs mention neither Defendants nor alleges any conduct in which they engaged. (Complaint, ¶¶ 93-95).

## 2. The Fourth Cause of Action Also Fails Because Its Claims Are Time-Barred.

As demonstrated above, the Complaint fails to allege facts sufficient to show that the claims in the Fourth Cause of Action are plausible and, for that reason, it fails.  In addition, for all the same reasons as those discussed, *supra*, in connection with the Second Cause of Action, the claims in the Fourth Cause of Action are all time-barred.

The Florida wiretap statute (Fla. Stat. § 934.03), the California wiretap statute (Cal. Penal Code § 632), and the Nevada wiretap statute (Nev. Rev. Stat. § 200.620) all provide for private civil remedies. *See* Fla. Stat. § 934.10; Cal. Penal Code § 637.2; Nev. Rev. Stat. § 200.690(1)(b). Two of the three statutes have the same limitations period as Pennsylvania's Act, while one has a shorter limitations period. The Florida wiretap statute incorporates an express two year statute of limitations for civil actions.[15] *See* Fla. Stat. § 934.10(3). The California wiretap statute contains no limitations period.  A civil action under the California statute has a one year statute of limitations, being encompassed within California's general limitations period for "an action upon a statute for a penalty or forfeiture, if the action is given to an individual." *See* Cal. Code Civ. Proc. § 340(a); *Warden v. Kahn*, 160 Cal. Rptr. 471, 478 n.8 (Cal. Ct. App. 1979).  A civil action under Nevada's wiretap statute is similarly encompassed within the state's general limitations period for "[a]n action upon a statute for a penalty or forfeiture, where the action is given to a person   . . . ." which, in the case of Nevada, is two years.  Nev. Rev. Stat. Ann. § 11.190(4)(b).

Using the same dates from the Complaint that Defendants identified in section III. C. 2. of this memorandum, which addresses the time-barred claims in the Second Cause of Action, (April 30, 2018, as the latest possible date of any alleged recording by Defendants, and October

---

[15]     "A civil action under this section may not be commenced later than 2 years after the date upon which the claimant first has a reasonable opportunity to discover the violation."  Fla Stat. § 934.10 (3).

12, 2018, as the supposed date on which the Moldovsky Plaintiffs became aware their calls were being recorded [*see* Complaint, ¶¶ 1, 14, 20, 22-23]), produces the same result as with the Second Cause of Action—that the claims are time barred—when measured against the March 23, 2021 filing date of this lawsuit,. Nearly three years have elapsed between the latest possible date of any alleged recording by Defendants and the commencement of this action; two and a half years have elapsed between the purported discovery date and the initiation of this lawsuit. Accordingly, the face of the Complaint demonstrates that Plaintiffs claims made under the Florida, California, and Nevada wiretap acts, each of which has a limitations period equal to or less than the Pa. Wiretap Act, are untimely. For that reason, the Fourth Cause of Action must also be dismissed.

### E. The Third Cause of Action, Which Seeks an Injunction, Fails Because the Moldovsky Plaintiffs Cannot Prevail on the Merits.

The Complaint's Third Cause of Action seeks a permanent injunction barring Defendants from using, conveying, publicizing, sharing with others, disseminating, or distributing any transcripts of, or copies, records or documents related to, "any recorded phone call done in violation of the law as plead herein. . ." It also seeks to have all such transcriptions, copies, records or documents turned over to them. (Complaint, ¶¶ 89-90).

The requirements for granting a permanent injunction include: (i) the plaintiff's demonstration of a likelihood of success on the merits of the claims; (ii) the lack of an available remedy at law; and (iii) a showing that the balance of the equities favors granting an injunction. *Morill v. Weaver*, 224 F.Supp.2d 882, 893 (E.D. Pa 2002) (citing *Ciba-Geigy Corp. v. Bolar Pharmaceutical Co*., 747 F.2d 844, 850 (3d. Cir. 1984); *see also Temple Univ. v. White*, 94 F.2d 201, 215 (3d Cir. 1991) (similar).

Without considering the sufficiency of the facts pleaded in support of the foregoing elements, the Third Cause of Action must fail as a matter of law. In light of the powerful arguments made, *supra*, for the dismissal of all other claims in the Complaint (the First, Second and Fourth Causes of Action) the Moldovsky Plaintiffs cannot succeed, or show they will succeed, on the merits of their claims: they cannot succeed in showing that Defendants recorded any phone call with the Moldovsky Plaintiffs in violation of the applicable law. Accordingly, to the extent that Defendants' Rule 12(b)(6) motion is granted with respect to the other Causes of Action, the Third Cause of Action must be dismissed.

## IV.       CONCLUSION

In consideration of the foregoing, Defendants, Andrew Ellner, Lightbox Ventures LLC and Lightbox Capital Management, LLC, respectfully request that the Court grant their Motion to Dismiss, Pursuant to Federal Rule 12(b)(2) and 12(b)(6), all Causes of Action in the Complaint with prejudice.

Respectfully submitted,

**HAINES & ASSOCIATES**

Dated:  June 28, 2021

*/s/  Clifford E. Haines*
 Clifford E. Haines (I.D. No. 09882)
The Widener Building, 5th Floor
1339 Chestnut Street
Philadelphia, PA 19107
Tel.:    (215) 246-2200
Fax:    (215) 246-2211
*Attorney for Defendants*