**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BREM MOLDOVSKY, ESQ., BREM MOLDOVSKY, LLC, <br><br> Plaintiffs, <br> *v.* <br><br> ANREW ELLNER, LIGHTBOX VENTURES, LLC, AND LIGHTBOX CAPITAL MANAGEMENT, LLC. <br><br> Defendants. | **CIVIL ACTION** <br><br> **JURY TRIAL DEMANDED** <br><br><br> **NO.** <br> **2:21-cv-01365 -ER** |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. §12 (b)(2) and (6)**

# Table of Contents

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 2

ARGUMENT ............................................................................................................................ 7

I.      Standard of Law .......................................................................................................... 7

II.     The Complaint Should Not Be Dismissed Because The Court Has Personal Jurisdiction Over Ellner and the Lightbox Entities ................................................................................. 9

a.      The Court has Personal Jurisdiction over Lightbox because Defendants availed themselves of Pennsylvania. ................................................................................................. 9

III.    The Complaint Must Not Be Dismissed Because It States Feasible Causes of Action . 13

a.      Dismissal Of Plaintiffs' Claims Pursuant to Rule 12(b)(6) Is Not Warranted ................. 14

b.      The Declaratory Judgement Count (Count I) is Based on Current, Ongoing Action and Should Not Be Dismissed ..................................................................................................... 15

c.      The Second Cause of Action Pursuant to 18 Pa. C.S.A. § 5725 for Violations of the Wiretap Act Should Not Be Dismissed As Defendants Have Already Admitted To The Wiretaps 15

i.      Whether or Not The Wiretap Act Applies to a Pennsylvania Resident Recorded in Pennsylvania by a Non-Resident In a Single-Consent State or Two-Consent State Is Subject to The Court's Analysis of Harm Caused ....................................................................................... 16

ii.     The Statute of Limitations Does Not Bar The Plaintiff's Claims Because They Are Ongoing.................................................................................................................................. 17

d.      The Fourth Cause of Action For Violations of The Wiretap Statutes Of Florida (Fla. Stat. Ch. 934.03), California Statute (Cal. Penal Code § 632) Nevada Statute (NRS 200.620) Should Not Be Dismissed Because There is Sufficient Facts to Establish the Causes of Action............. 18

e.      There Is A Likelihood Of Success On The Merits of Count Three, Seeking An Injunction 19

CONCLUSION........................................................................................................................ 19

**Cases**

Action Mfg. Co. v. Simon Wrecking Co., 375 F. Supp. 2d 411, 418 (E.D. Pa. 2005) .................. 8

Actual of America, Inc. v. Tai Wing Enterprises Company, Ltd., Not Reported in F.Supp., 1996 WL 243562 (E.D.Pa. 1996) ...................................................................................................... 13

Broughal v. First Wachovia Corp., 14 Pa. D. & C.4th525 (Pa. C.P., Northamp. Co. 1992) ........ 18

Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ............................. 9

Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ................................................... 15

Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir.1993) .............. 11

In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d 538, 556, 559 (M.D. Pa. 2009) .......................................................................................................................................................... 8

Larrison v. Larrison, 750 A.2d 895 (Pa. Super. 2000) ................................................................ 18

Lehigh Coal and Nav. Co. v. Geko-Mayo, GmbH, 56 F.Supp.2d 559 (E.D.Pa. 1999) ................. 9

Leonardo da Vinci's Horse, Inc. v. O'Brien, 761 F.Supp. 1222, 1227 (E.D.Pa.1991) ................. 13

Lionti v. Dipna, Inc., 2017 WL 2779576, at *1 (E.D. Pa. June 27, 2017) ..................................... 8

Mellon Bank v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) ......................................................... 8

Mulder v. Wells Fargo Bank, N.A., 2018 WL 3750627 (W.D.P.A., July 10, 2018) .................... 17

Nelson v. Temple University, 920 F.Supp. 633 (E.D.Pa.1996) ................................................... 10

O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 325 (3rd Cir. 2007) ........................... 12

Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002) ................................................ 7

Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984) .................. 8

Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77 at 84 (3d Cir. 2011) .......................................... 7

**Statutes**

18 Pa. C.S.A. §§ 5701 ..................................................................................................................... 5

42 Pa.C.S.A. § 5322 (A)(4) .............................................................................................................. 7

Fla. Stat. ch. 934.03 ....................................................................................................................... 17

**Rules**

Cal. Penal Code § 632 .................................................................................................................. 17

Fed. R. Civ. P. 12(a)(1)(A)(1) ........................................................................................................ 1

Fed. R. Civ. P. 12(b)(2) and (6) ..................................................................................................... 1

NRS 200.620 ................................................................................................................................. 17

Plaintiffs Brem Moldovsky and Brem Moldovsky, L.L.C. (hereinafter, "Plaintiffs") hereby submit this memorandum in opposition to Andrew Ellner, Lightbox Ventures, LLC and Lightbox Capital Management, LLC's (collectively, "Lightbox") Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and (6).

## PRELIMINARY STATEMENT

As a preliminary matter, this motion should be denied because the Defendants are in default. Defendants filed their motion on June 28, 2021, which was later than the 21 days allowed for their responsive pleading or motion. Pursuant to Fed. R. Civ. P. 12(a)(1)(A)(1) and 12(f)(2) the motion should be denied. This was elaborated in the Plaintiff's letter motion to strike this motion, ECF Doc. #19, and especially in the Plaintiffs' Opposition to the Defendants' request for an extension, ECF Doc. #15. Defendants have already acknowledged their untimeliness by moving the Court for leave for an extension of to file an untimely response (ECF Doc. # 14). The facts concerning their default are not, therefore, in dispute.

On the merits, Defendants' motion should also be denied. The Court has jurisdiction over the parties and the subject matter sufficient to hear the action. Also, arguably, this action should be joined with the two related actions, Ellner v. Moldovsky, et al., EDPA Case No.: 2:20-cv-06190-ER and Miller v. Moldovsky, et al., EDPA Case No.: 2:21-cv-02219-ER wherein Mr. Ellner, like Mr. Miller have submitted themselves to this Court's jurisdiction by initiating their lawsuits against the undersigned pursuant to Federal Rule 13 (a) and (b) regarding compulsory and permissive counterclaims. The action is based on probable cause and makes a prima facie showing sufficient to state causes of action against the Defendants and overcome a motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs rely on the factual allegations of their Complaint, which are incorporated herein as if stated fully at length.  Plaintiffs also refer the Court to the factual background of the related matters Ellner v. Moldovsky, et al., EDPA Case No.: 2:20-cv-06190-ER and Miller v. Moldovsky, et al., EDPA Case No.: 2:21-cv-02219-ER and in particular the motions to dismiss in those matter for the Court's consideration as stated in the accompanying Declaration of Brem Moldovsky, Esq.  (See, Moldovsky Dec. ¶ 2)  In addition, Plaintiffs counter the factual allegations of Lightbox as follows.

<u>Lightbox Was Aware That Plaintiffs Reside In And Were Primarily Present In Pennsylvania</u>

In connection with the now dormant "3rd Home Litigation,"  <u>Lightbox Ventures, LLC v. 3rd Home Limited</u>, No. 16-cv-2379 (S.D.N.Y.), Mr. Ellner and one of the Lightbox entities, Lightbox Ventures LLC, entered into a contract for legal services with  Brem Moldovsky, L.L.C. Defendants knew that Plaintiffs primarily were based in and worked in Pennsylvania ( Moldovsky Dec. at ¶ 7), although of course Plaintiffs maintained an office New York (which is where the 3rd Home Litigation was venued).  Plaintiffs work took place almost entirely in Pennsylvania, which Defendants knew.  In fact, from the time Plaintiffs were retained, the record shows that none of the parties or their counsel set foot in the Southern District of New York courthouse for any of the litigation.  Defendants sent papers to Plaintiffs at their primary office in Pennsylvania, as did the vendors hired by Lightbox to work on the 3rd Home case, which Lightbox also knew.  <u>See</u>, Ex. "D".  Defendants herein sent and received numerous e-mails confirming that the Plaintiffs' Pennsylvania address was the correct one to use.  <u>See e.g.</u>, Ex. "B".  Mr. Ellner paid Lightbox Ventures' legal fees through Lightbox Capital Management to Plaintiffs' office in Pennsylvania.  <u>See</u>, Exs. "B" and "C" .  Simply put, Defendants contracted with a Pennsylvania attorney to handle the Third Home matter pending in New York.  This was

2

intentional: Lightbox was trying to save money by retaining counsel from a less expensive market than the Southern District of New York.

Between November 2017 and April 2018, Lightbox recorded an unknown number, but at least two, telephone calls (perhaps as many as 50-100, but it could be more or less) between Mr. Ellner and the Plaintiffs. Regardless of whether these calls were placed to Plaintiffs' cell phone or office numbers, these calls were answered in Pennsylvania, and Defendants knew this or at least should have expected that they would generally reach their counsel at his office (in Pennsylvania) other than at times when counsel was traveling to a court appearance on another matter or was specifically in his New York, New Jersey or Philadelphia offices. (Although the parties met on occasion in New York when Plaintiffs were present for other matters, as noted above, Plaintiffs were never physically present in the Southern District of New York courthouse for the matter.) By the time Lightbox was recording at least most of Mr. Ellner's phone calls, Mr. Miller was already Lightbox's counsel and knew from his representation of Plaintiffs years earlier that they were located primarily in Pennsylvania. (See, Moldovsky Dec. at ¶ 3; see also, Miller Complaint, Miller v. Moldovsky, et al., EDPA Case No.: 2:21-cv-02219-ER, ECF Doc. # 1 at ¶ 9 ("Brem Moldovsky, LLC is a law firm and a Pennsylvania limited liability company, with a principal office located in Philadelphia, PA")). Lightbox received calls from and called to Defendants including outside of business hours and often on a Pennsylvania cell phone line with a 610 area code on a sufficiently regular basis, including on professional and personal time, on weekends and on holidays, as was convenient for Lightbox. (Complaint at ¶ 12). Therefore, Lightbox knowingly reached into Pennsylvania and, by recording at least two telephone calls with Plaintiffs who were located in Pennsylvania, without Plaintiffs' knowledge or consent, broke the laws of Pennsylvania.

Lightbox's assertion in its memorandum in support of its motion ("Memorandum", ECF Doc. #16-1 at 4) about the origin of its telephone calls to Plaintiff is both inaccurate and immaterial. Whether Lightbox was in New York or someplace else is not relevant (unless it was in Pennsylvania). What matters, for purposes of jurisdiction, and what has been plainly alleged and can be easily proven is its calls arrived in Pennsylvania and it recorded some of these calls.

Regarding the origins of the calls, as has been stated, "Ellner and Lightbox travel frequently to many different states and countries, and as such, their location at the time of various of the recordings is unknown some or more of the time." (Complaint at ¶28). It is still unknown whether or not the calls that were recorded originated in New York or another state (or country) or where the recordings were done. What is known is that Defendants reached into Pennsylvania and knowingly broke its laws.

In addition, Lightbox was in possession of these recordings and provided them to others in Pennsylvania or related to Pennsylvania, including to Mr. Miller and to various Pennsylvania attorneys over the last few years as Lightbox sought counsel and consulted with counsel regarding the Bucks Action and his own EDPA suit in violation of 18 Pa. CSA §5721.1(a), which prohibits the disclosure of the contents of wiretaps or evidence derived from them, as evidence by an unauthorized individual (such as Mr. Ellner). Lightbox's New York counsel Mr. Miller, a licensed Pennsylvania attorney who represented the Plaintiffs in unrelated Bucks County litigation and had been to and was aware of the Plaintiffs' Bucks County office was in possession of the recordings at least as early as October 2018, when he utilized the contents of them as evidence on behalf of Lightbox. (Complaint at ¶13). Indeed, Lightbox has referred to these recordings, as well as transcribed portions of them, in no fewer than 4 court papers in at least 3 jurisdictions.

4

<u>Lightbox's Contacts With Pennsylvania and Other Jurisdictions</u>

At the time Defendants retained Plaintiffs for the 3rd Home Litigation, Lightbox represented that it sought, and provided direction and strategy based on its seeking to maintain control of a joint venture that was a global, online, real estate venture with 3rd Home Ltd., an international high-end vacation home share company based in Tennessee.[1] ~~It was~~ Mr. Ellner represented that Lightbox was an international and interstate real estate enterprise, and that Lightbox had the ability to and had been conducting or planning on conducting business in other states. (Complaint at ¶16).  The Joint Venture itself was a fractional real estate sales arm of the luxury home exchange that Mr. Ellner intended to manage as Lightbox along with his wife, Jill Ellner, a trained attorney and licensed realtor on behalf of Lightbox Ventures, LLC. <u>See</u>, Ex. "A".  Some of the first properties to be listed were the Ellners' own timeshares in California.  Part of the strategy proposed by Lightbox was maintaining control of the joint venture and supplementing back end payment to the Moldovsky Firm with ownership shares of the company and/or 3rd Home Ltd if Ellner took it over, as ethically allowed.  Some of these conversations took place while Lightbox was in locations other than New York and while Plaintiffs were in Pennsylvania. Thus, while Lightbox may be New York based, it was not at any point in time relevant to this Complaint a company that only comported or did business in New York.  This is all the more so with some of Lightbox's efforts, including in using Plaintiffs' services in effort to gain ownership and control of its former partner then litigation adversary, 3rd Home Ltd.

<u>The Bucks County Action</u>

The "Bucks Case" (Moldovsky v. Miller et al, Court of Common Pleas of Bucks County, Pa., No. 2019-00793) was initiated on February 5, 2019 based in part on Lightbox's violations of the

---

[1] https://www.thirdhome.com

Pennsylvania Wiretap Act (18 Pa. C.S.A. §§ 5701 *et. seq.*, hereinafter the "Wiretap Act and related causes of action that are based on largely the same facts and allegations as the origins of the factual background of this Complaint (as this Complaint includes facts and allegations which occurred after the Bucks Case ended). There were also claims against Lightbox related to their aiding and abetting their attorney Jonathan Miller's malpractice and breaches of fiduciary duties. That matter was unilaterally withdrawn in part because Mr. Miller lacked malpractice insurance and since Ellner and Miller strongly objected that the matter should be in New York and the claims could (at least) generally be there.

The Current Matter

This action was initiated on March 22, 2021 in conjunction with the SDNY Action Brem Moldovsky, L.L.C. et al. v. Miller et al., 1:21-cv-02452(NRB) filed a few days before (since withdrawn) because under Federal Rules 18 and 19 requiring joinder of claims and parties and Rule 13 regarding mandatory counterclaims and crossclaims, particularly Rule13(a) and (b), it did not appear that either the EDPA nor SDNY had jurisdiction over all of the claims and all the parties that are plead by the undersigned between the two suits. Based on the comments of SDNY Judge Buchwald and this honorable Court, it appears that the claims should be brought, as much as possible, in the EDPA and together. Thus, it appears likely that there will be additional claims against the Defendants in this matter, and that the matter should not be dismissed without affording the Plaintiffs the opportunity to plead. The additional claims anticipated against Mr. Miller, Mr. Ellner and his entities include malicious prosecution, perversion of process, deceit and collusion, defamation and libel. Claims against Mr. Miller include his malpractice, breaches of fiduciary duties, breaches of contract, frauds, fraudulent inducement, and other misconduct. The Plaintiffs anticipate requesting leave to amend the

counterclaims in <u>Ellner v. Moldovsky et al.</u>, EDPA, Case No.: 2:20-cv-06190-KSM to incorporate those claims and align the counterclaims with the counterclaims and third-party claims in the <u>Miller v. Moldovsky et al.</u>, EDPA No.:2:21-cv-02219-ER action, since it appears that all should be plead and heard together and because Mr. Ellner's initiation of litigation in this forum has placed the claims here appropriately as counterclaims against him.  The same is true for Mr. Miller.

## ARGUMENT

**I.  Standard of Law**

On a motion to dismiss brought under Rule 12(b)(2) and 12(b)(6), the Court must resolve all inferences in favor of the Plaintiff and assume that all allegations are the truth. <u>See</u>, <u>Warren Gen. Hosp. v. Amgen, Inc.</u>, 643 F.3d 77 at 84 (3d Cir. 2011).  Where a defendant has raised a lack of jurisdiction defense, the burden shifts to the plaintiff to make a prima facie showing of jurisdiction over the defendant in the forum.  <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 368 (3d Cir. 2002).

A Rule 12(b)(2) motion cannot be granted where the Plaintiff has alleged a sufficiently plausible showing of jurisdiction with sufficient contact to establish personal jurisdiction in the forum.  <u>See</u>, <u>Mellon Bank v. Farino</u>, 960 F.2d 1217, 1223 (3d Cir. 1992);  see also <u>Action Mfg. Co. v. Simon Wrecking Co.</u>, 375 F. Supp. 2d 411, 418 (E.D. Pa. 2005) ("In order to establish a prima facie case,  the plaintiff must present  specific  facts  that  would  allow the  court  to  exercise  jurisdiction over the defendant.") Because courts "must accept all of the  plaintiff's allegations  as  true  and  construe  disputed  facts  in  favor  of  the  plaintiff." <u>Pinker</u>,  292  F.3d at 368, the plaintiff "must  present  similar  evidence  in  support  of personal  jurisdiction…in support of purposeful availment jurisdiction." <u>In  re  Chocolate</u>

Confectionary Antitrust Litig., 602 F. Supp. 2d 538, 556, 559 (M.D. Pa. 2009).  The plaintiff's response to the motion must include "actual proofs;' 'affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry.'" Lionti v. Dipna, Inc., 2017 WL 2779576, at *1 (E.D. Pa. June 27, 2017) (quoting Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984))

Here, jurisdiction is appropriate in the Federal Courts pursuant to  28 U.S.C. §1332(a).[2] Federal Courts sitting in diversity apply the substantive law of their host state, here Pennsylvania, including the forum state's jurisdictional statutes, in this case, Pennsylvania's long-arm statute, 42 Pa. C.S.A. § 5332.  See, Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).  Plaintiffs have established that Defendants have purposely directed themselves at and availed themselves of Pennsylvania sufficient to satisfy the Pennsylvania long-arm statute,  42 Pa.C.S.A. § 5322, which provides this Court with personal jurisdiction upon a showing that a Defendant caused "harm or tortious injury in this Commonwealth", which includes "… by an act or omission outside this Commonwealth." 42 Pa.C.S.A. § 5322 (A)(4).  The exercise of such jurisdiction is consistent with due process under the Federal Constitution.  See generally, Lehigh Coal and Nav. Co. v. Geko-Mayo, GmbH, 56 F.Supp.2d 559 (E.D.Pa. 1999).

A motion to dismiss pursuant to Rule 12(b)(6) cannot be granted where Plaintiff states a claim that is legally feasible.  Its purpose is to "test legal sufficiency of complaint" when all alleged facts are accepted as true and "and all reasonable inferences that can be drawn from

---

[2] Diversity jurisdiction is appropriate because the amount in controversy exceeds $75,000.  18 Pa C.S.A. § 5725 (a)(1) allows damages of "not less than liquidated damages computed at the rate of $100 a day for each day of violation, or $1,000, whichever is higher."  Lightbox's wiretaps date at least as far back as November 23, 2017 when the Thanksgiving Day recording was made, approximately or in excess of 1,325 days from the date of this filing. Damages for this one wiretap alone, by statute, can exceed $132,500 not including punitive damages and attorney's fees. Lightbox has admitted that there is at least one other recording.  Neither have been disputed.

them after construing them in light most favorable to non-movant."  Thus, "[d]ismissal for failure to state claim is not appropriate unless it is clear that no relief could be granted under any set of facts that could be proved consistent with allegations."  Nelson v. Temple University, 920 F.Supp. 633 (E.D.Pa.1996).

## II.    The Complaint Should Not Be Dismissed Because The Court Has Personal Jurisdiction Over Ellner and the Lightbox Entities

### a.   The Court has Personal Jurisdiction over Lightbox because Defendants availed themselves of Pennsylvania.

Jurisdiction in the Eastern District of Pennsylvania is appropriate because Lightbox's activities were specifically directed toward Mr. Moldovsky at his office, which is located in this District.  Defendants forays into Pennsylvania were with the intent to tortiously harm a Pennsylvania resident, and the tortious harm continues.  Mr. Ellner made calls to the Plaintiffs' Pennsylvania phone lines that, on at least two occasions, were recorded in violation of Pennsylvania's wiretap act, 18 Pa. Cons. Stat. Ann. § 5725 and 5703 – which prohibits intentional wiretaps, the disclosure of the contents of wiretaps, and the use of the contents of wiretaps or evidence derived thereof. and grants a private right of action and $1,000 daily in damages to the person whose communications were recorded –and the wiretaps that were made during the Moldovsky Firm's representation of Lightbox and related to the representation of Lightbox, which Mr. Ellner controls and is the principle of, caused and continue to cause tortious harm to the Plaintiffs, thus triggering jurisdiction under the Pennsylvania long-arm statute.  "The Pennsylvania long-arm statute provides for the specific jurisdiction… [42 Pa. Cons.Stat. Ann. § 5322]… over non-resident defendants…. Specific jurisdiction arises when the plaintiff's "claim is related to or arises out of the defendant's contacts with the forum."  Lehigh Coal and Nav. Co. v. Geko-Mayo, GmbH, 56 F.Supp.2d 559 at 565 (E.D.Pa. 1999) (internal citations omitted).  42

PSCA § 5322(4) imparts subject matter jurisdiction over actions "Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth."

    At the time of the occurrences of this Complaint, a series of recorded phone conversations were made, used, possessed, shared, exposed, and presented as evidence in other courts, by Mr. Ellner on behalf of Lightbox (because Lightbox was the Moldovsky Firm's client) while both Mr. Ellner, and therefore Lightbox, were aware that Plaintiffs resided in Bucks County, PA and were typically present at their offices in Bucks County, PA (and other places in this District).  As was alleged in the Complaint, Mr. Ellner made payments on behalf of the Moldovsky Firm's clients himself and Lightbox, and Lightbox regularly mailed those payments and materials to the Bucks County, Pennsylvania office, which they utilized and treated as the primary address for contact.  Mr. Ellner, on behalf of the Moldovsky Firm's clients himself and Lightbox, received calls from and called to Defendants including outside of business hours and often on a Pennsylvania cell phone line with a 610 area code on a sufficiently regular basis, including on professional and personal time, on weekends and on holidays (Complaint at ¶ 12).  During this same time, Mr. Ellner's New York counsel Mr. Miller was also very well aware that the Plaintiffs operated primarily out of a Pennsylvania office, and had been to it.  As has been held, Mr. Ellner's mail and telephone contacts made knowingly into Pennsylvania are sufficient contact for jurisdiction. See, Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir.1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction.").  The Defendants' contacts with Pennsylvania were more than sufficient enough to warrant jurisdictional discovery, in the opinion of Judge Robert O. Baldi.  (Complaint at ¶44). Thus jurisdiction is proper in this forum because "when minimum contacts exist, due process demands no more than a reasonable forum"

O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 325 (3rd Cir. 2007).  This is particularly true here where Mr. Ellner and his attorney Mr. Miller have each already initiated suit in this Court and the matters are related and should be joined.

Later, Mr. Ellner personally and on behalf of Lightbox availed themselves of Pennsylvania, entered into the Commonwealth and delivered the contraband recordings and transcripts as "evidence" into the Commonwealth in their search for Pennsylvania counsel, including to their current counsel and possibly to Fox Rothschild (Complaint at ¶ 42), and has introduced the contraband recordings to others, or so it is understood and believed, including, potentially to his counsel Mr. Haines.

Mr. Ellner has personally availed himself of the Commonwealth's jurisdiction in connection with the dispute at hand, including by the process of finding and hiring counsel and sharing and utilizing contraband evidence under Pennsylvania law,[3] preparing for and then initiating the Eastern District of Pennsylvania action, Ellner v. Moldovsky, Case No.: 2:20-cv-06190-KSM, wherein he makes claims based on litigation against himself and Lightbox, and wherein he has used and intends to use the recordings, information about the recordings, and misrepresentations about the recordings, within the litigation and without it, including sharing it with others in the Commonwealth, including to this Court.  Thus, Defendants purposely took "specific actions…that caused tortious harm in Pennsylvania." See, Actual of America, Inc. v. Tai Wing Enterprises Company, Ltd., Not Reported in F.Supp., 1996 WL 243562 (E.D.Pa. 1996) (citing Leonardo da Vinci's Horse, Inc. v. O'Brien, 761 F.Supp. 1222, 1227 (E.D.Pa.1991) ("Certain

---

[3]"The mere entrance of a non-resident defendant into a contract with a Pennsylvania corporation does not bring the defendant within the jurisdiction of Pennsylvania courts." Mickleburgh Machinery Co., Inc. v. Pacific Economic Development Co., 738 F. Supp. 159 (E.D. Pa. 1990), but it is not "necessary for jurisdiction that the contract with a Pennsylvania corporation be made in Pennsylvania where substantial performance of the contract was to take place in Pennsylvania." Inpaco, Inc. v. McDonald's Corp., 413 F. Supp. 415 (E.D.Pa. 1976).

intentional conduct in one forum that has an 'effect' in a second forum.. can be a sufficient basis for finding minimum contacts in the second forum.")).. None of Mr. Ellner of Lightbox's contact on behalf of and for the benefit of Lightbox were "random, fortuitous, or attenuated" (Memo, ECF Doc. # 16-1 at 14) and in fact were deliberate and purposefully established and once Defendants began wiretapping, Defendants did so with intent to reach into Pennsylvania to engage in tortious misconduct and commit civil and criminal violations of Pennsylvania law.

Subjecting Defendants to litigation in the Eastern District of Pennsylvania is not contrary to fair play and substantial justice either. Defendants have already initiated their own Easter District of Pennsylvania litigation. Thus, the five prong analysis of fairness is almost immediately determined by Defendants' own actions. According to the Court in <u>Lehigh</u>, "The factors to be considered in making this fairness determination are: (1) the burden on the defendant, (2) the forum State's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Id.* at 569. The analysis is sidelined by Defendants own lawsuit because 1) there is no inconvenience to Defendants inherent in litigating the Plaintiffs' claims in the same Court where their own lawsuit is placed; 2) the State of Pennsylvania has an interest in adjudicating the Plaintiff's claims in conjunction with those of Defendants in their action, particularly because they relate to a violation of Pennsylvania law and a few Pennsylvania attorneys; 3) it is convenient for both the Plaintiffs and Defendants to obtain relief in this Court; 4) it is most efficient for Plaintiffs and Defendants to obtain relief in one Court as opposed to several Courts; and 5) both states have a shared interest in not having exasperating and ongoing, continuous, redundant litigation pushed on and on by Defendants

ongoing and further usage of incomplete parts of recordings and transcripts with partial and misleading contexts (as they have done).

Defendants claim that Jurisdiction in this Court is improper because a) the claims do not arise out of Defendants' forum related activities; b) Defendants' did not direct their actions at a Pennsylvania resident; c) the Lightbox entities have not availed themselves of Pennsylvania (since they are not parties to Ellner's EDPA lawsuit); and d) Ellner's contacts into Pennsylvania were not more than a random, casual, or fortuitous contact.   Defendants are wrong, as stated in the foregoing paragraphs.   Specifically, a) the Plaintiffs' claims arise out of Defendants' purposeful wiretaps, some of which took place while Plaintiffs were in Pennsylvania. See, Ex. "E"; b) Defendants knew Plaintiffs were Pennsylvania residents in Pennsylvania. See, Moldovsky Dec. at ¶ 7"; c) the Lightbox entities are controlled by Ellner and  were involved in making and utilizing  the wiretaps in New York and Federal litigations  that predate Ellner's EDPA litigation ; and d) Ellner and Lightbox's contacts into Pennsylvania during the time complained of, November 2017 – April 2018 and since then, (i.e. before Ellner's lawsuit) were often and deliberate.

For the foregoing reasons, dismissal based on jurisdiction is not warranted and the Defendants' motion should be denied.

### III.     The Complaint Must Not Be Dismissed Because It States Feasible Causes of Action

The Plaintiff's Complaint is premised on facts and allegations that sufficiently establish prima facie claims against the Defendants.  The Complaint is not based on speculative wiretaps, it is based on at least two known wiretaps, and likely more, that Lightbox does not deny were made, transcribed, used, distributed, and that Lightbox continues to use, store and distribute.  The Complaint must be sustained and the motion to dismiss it should be denied.

### a.   Dismissal Of Plaintiffs' Claims Pursuant to Rule 12(b)(6) Is Not Warranted

In order to grant Defendants' motion to dismiss the Court must necessarily find that even read in the light most favorable to the Plaintiffs, the Plaintiffs fail to make a "facially plausible" claim.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  There is no doubt that the claims here are facially plausible.  Defendants have already admitted to at least two wiretaps, both of which Defendants filed via a transcription as an Exhibit to Mr. Ellner's Affirmation in Opposition to a Statutory Charging Lien proceeding in the Southern District of New York ancillary interpleader litigation on October 12, 2018.  These transcripts are still on the public docket in the matter of Lightbox Ventures, LLC v. 3rd Home Limited, No. 16-cv-2379 (S.D.N.Y.). [4] There are more recent usages as well.

There is no dispute that there were potentially 50-100 or more phone calls between Plaintiffs and Defendants in the course of the representation of Defendants by Plaintiffs.  Defendants have thus far, in other litigations, evaded discovery that would definitively establish how many of them were recorded, which ones,  and any of the circumstances surrounding the recordings and transcriptions.  They have also been dishonest about the recordings.  See, Moldovsky Dec. at ¶ 18.  Because Plaintiffs were domiciled in and mostly within Pennsylvania at all relevant times, there is probable cause to believe that at least some of those calls were recorded under circumstances that violate Pennsylvania's wiretapping statute.

Wholesale dismissal for failure to state a claim is therefore not warranted, and the motion should be denied.

---

[4] The public filings in the S.D.N.Y. are at least partially redacted but available on Pacer: https://ecf.nysd.uscourts.gov/doc1/127023468350

**b.   The Declaratory Judgement Count (Count I) is Based on Current, Ongoing Action and Should Not Be Dismissed**

The Plaintiff's first cause of action for declaratory judgment seeks to enforce the Pennsylvania Wiretap statute against Lightbox for actions that are ongoing and continuous.  The Pennsylvania Wiretap act prohibits the use of "the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication." Pa. C.S.A. §5703(3).  Lightbox still possesses and still endeavors to disclose the contents of the wiretapped phone calls, in current violation of the act.  A request for declaratory judgment determining the legality of and making Lightbox liable for, proscribing, prohibiting, stopping, etc. this ongoing violation is appropriate and should not be dismissed.

**c.   The Second Cause of Action Pursuant to 18 Pa. C.S.A. § 5725 for Violations of the Wiretap Act Should Not Be Dismissed As Defendants Have Already Admitted To The Wiretaps**

Lightbox has admitted to at least two violations of the Pennsylvania Wiretap Act, 18 Pa. C.S.A. § 5703, though it is likely and understood that there may be others.  Mr. Ellner made at least two surreptitious recordings of a Pennsylvania resident who was in Pennsylvania at the time, and then provided at least two recordings to Lightbox's counsel Mr. Miller Mr. Miller for transcription and use in Lightbox's litigation against the Plaintiffs, including by filing them on the public docket in New York, all acts that are clearly in violation of 18 Pa. C.S.A. § 5703 (1)(2) and (3).  Lightbox still does not deny this, but refers to claims about any additional wiretaps as speculative. (Memorandum, Doc. #16-1 at 23 fn 10).  Lightbox's designation does not matter.  There were at least two illegal wiretaps in violation of the wiretap act that are admitted and not speculative.  It is expected that discovery (which Lightbox has so far evaded for

years) will produce more.

> ### i.   Whether or Not The Wiretap Act Applies to a Pennsylvania Resident Recorded in Pennsylvania by a Non-Resident In a Single-Consent State or Two-Consent State Is Subject to The Court's Analysis of Harm Caused

The application of the Pennsylvania Wiretap Act can be subject to the weighing and balancing the application of each state's wiretap laws for the greatest protection of the person being wiretapped.  If Mr. Ellner was recording from New York when the Plaintiff was in Pennsylvania, depending on the circumstances of the case, the wiretap act can be applied.  It is within the discretion of the court to find that party to a call who is outside of Pennsylvania can be liable under the PA Wiretap Statute based on a weighing of damage and harm to the victim.  See, Mulder v. Wells Fargo Bank, N.A., 2018 WL 3750627 (W.D.PA., July 10, 2018) and Larrison v. Larrison, 750 A.2d 895 (Pa. Super. 2000).  Particularly now, the weight of the Pennsylvania law prevails because the usage of the wiretapped phone calls is imminently going to be in Pennsylvania litigation.

Although Lightbox disagrees with the analysis of Larrison, it concedes that the approach was flexible, in that the Court applied a careful weighing of considerations before "allowing the forum to apply the policy of the jurisdiction most intimately concerned with the outcome." Larrison, at 895.  Here, Pennsylvania is most intimately concerned with a surreptitious wiretap of a Pennsylvania resident in Pennsylvania, where the wiretap was then transcribed and filed on a public docket.  So too, the Court in Broughal v. First Wachovia Corp., 14 Pa. D. & C.4th 525 (Pa. C.P., Northamp. Co. 1992) performed this analysis and, although it ultimately determined that the wiretaps in that case "did not constitute an offense at the place of commission," that determination was based on the further determination that "there was no intentional or knowing

result caused within the Commonwealth."  Here, there was an intentional and knowing result of the recordings when Lightbox filed them as "evidence" in a New York lawsuit and then committed further violations of the wiretap act by continuing to use and distribute the recordings, including, now, here in Pennsylvania and for use including in this case.

Reading the Complaint and applying this analysis in the light most favorable to the Plaintiff, the Court must conclude that dismissal is unwarranted, particularly because the number of recorded telephone calls is not yet known.  Further, Mr. Ellner could easily have been and likely was in another two consent state at the time of one or more recorded calls because Mr. Ellner (Lightbox) at the time owned homes in and travelled to other states and internationally regularly, including in California and, on information and belief, in Nevada and Florida.  As was raised in the Complaint, each of these states is a two consent state and, by recording a telephone call, Lightbox would have violated wiretap laws in both states.

On this basis, the Complaint should not be dismissed and Defendants' motion should be denied.

### ii.  The Statute of Limitations Does Not Bar The Plaintiff's Claims Because They Are Ongoing

Plaintiffs relief under the wiretap act is not time barred by the statute of limitations, either.  Even if the recording of telephone calls concluded in April 2018 as postulated, Lightbox continued to utilize the transcripts and evidence from them as recently as January 15, 2021 in the New York State litigation, well within the arguably irrelevant two-year period of time proposed as a limitation by Lightbox.  This could only apply to the phone call recordings that had been discovered as of October 2018.  Upon information and belief, there are others yet undiscovered that the discovery rule still applies to in an ongoing manner until they are disclosed.

Aside from the overt usage and potential undiscovered recordings, Lightbox still

17

possesses and intends to use the recordings and transcripts to this day in an ongoing manner. Thus, there has been no expiry of the claims.  To be clear, there is more than enough violation of the wiretap statute plead in the Complaint within the statute of limitations even if there also was earlier violations.

> **d. The Fourth Cause of Action For Violations of The Wiretap Statutes Of Florida (Fla. Stat. Ch. 934.03), California Statute (Cal. Penal Code § 632) Nevada Statute (NRS 200.620) Should Not Be Dismissed Because There is Sufficient Facts to Establish the Causes of Action**

Plaintiff seeks a Declaratory Judgement that if, upon discovery, it is determined that Defendants' wiretaps were made in Florida, California, or Nevada the Defendants should be found in violation of and liable for their violations of the wiretap statutes of those states as well. The request for relief is made based on the fact that there are at least two known recorded phone calls that occurred while Plaintiffs were in Pennsylvania (certainly for at least one of them, on Thanksgiving 2017).  The originating location is yet unknown, but Lightbox regularly traveled and spoke with the Plaintiffs while traveling, possibly to homes owned in California, Florida, or Nevada, or to visit others there – as stated in the Complaint.  (Complaint at ¶ 92).

Contrary to Lightbox's argument, these claims are not time-barred either, for the same reasons as stated above.  The Plaintiffs have not yet discovered the extent of the recorded calls, when they were made, from where, or any other circumstance of any call in violation of the wiretap statutes of Florida (Fla. Stat. ch. 934.03), California (Cal. Penal Code § 632), or Nevada (NRS 200.620).

The Defendants' motion to dismiss Count IV should be denied and the claims should remain in place pending discovery related to the recordings is turned over.

**e.   There Is A Likelihood Of Success On The Merits of Count Three, Seeking An Injunction**

The Plaintiffs' cause of action for a permanent injunction should not be dismissed because it is likely to prevail.  The Plaintiff has alleged and Defendants cannot deny that Defendants committed wiretaps.  There is i) a likelihood that the Plaintiffs will prevail on those claims;  ii) no other remedy at law in place to prevent the further distribution of the wiretapped recordings and transcripts; and iii) there is no harm to Defendants alleged if an injunction preventing their further usage of wiretapped phone call recordings is put in place.  Therefore, in this instance, the balance of the equities favors the injunction and certainly seen in light most favorable to Plaintiffs this claim should not be dismissed either.

## CONCLUSION

For all of the foregoing reasons, the Defendants' motion should be denied, and Plaintiffs' complaint should not be dismissed.


Dated: Bucks County, Pennsylvania
June 12, 2021

                                    BREM MOLDOVSKY, L.L.C.

                            By:   *Brem Moldovsky*
                                    Brem Moldovsky, Esq.
                                    100 N. 18th Street, Suite 300
                                    Philadelphia, PA 9103
                                    (215) 546-9957
                                    brem@bremlaw.com